**Beresford N. SPRINGER, Plaintiff,**

v.

**Gretchen SEAMAN, et al., Defendants.**

**Civ. No. 86–0322–P.**

United States District Court,
D. Maine.

April 30, 1987.

Harold L. Lichten, Boston, Mass., for plaintiff.

Paula D. Silsby, Asst. U.S. Atty., Theodore H. Kirchner, Portland, Me., for defendants.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO RECONSIDER OR FOR LEAVE TO FILE LATE OBJECTION AND DEFENDANTS' MOTIONS TO DISMISS

GENE CARTER, District Judge.

This case is before the Court on Plaintiff's motion to reconsider or for leave to file late objection in connection with the Court's order granting Defendants Dorothy McGlinchey and Gretchen Seaman's motion to dismiss Plaintiff's complaint. Also pending is Defendant Michael Sea-

man's motion to dismiss Plaintiff's complaint. Because the parties rely on matters outside the pleadings, the Court treats both motions to dismiss as motions for summary judgment. For the reasons stated herein, the Court will grant the motion for leave to file late objection, address the merits of Defendants McGlinchey and Gretchen Seaman's motion for summary judgment, and grant that motion in part. The Court will also grant in part Michael Seaman's motion for summary judgment.

## I. *Background*

Plaintiff Beresford N. Springer, until May of 1985, held a contract as a rural mail carrier for the United States Postal Service (USPS) in western Maine. Defendants Dorothy McGlinchey and Gretchen Seaman are employed by the USPS as postmistress and relief postmistress, respectively, in the West Newfield, Maine post office. Defendant Michael Seaman is a selectman of the Town of Newfield, Maine. Plaintiff originally brought various federal and pendent state claims against Defendants, alleging that they had made false, racially motivated accusations resulting in the termination of his contract with the USPS. The facts are reviewed in detail in *Springer v. Seaman*, 639 F.Supp. 1137 (D.Me.1986), *appeal docketed*, No. 86–1809 (1st Cir. Aug. 28, 1986).[1] For present purposes, it is enough to repeat Plaintiff's allegations that as a result of charges of improper conduct leveled against Plaintiff by Defendants, the USPS sent "test mail" to nonexistent postal customers on Plaintiff's route. Upon concluding that Plaintiff had mishandled these items, the USPS terminated his contract.

This Court granted summary judgment on the federal claims, finding that Plaintiff could not establish that the activities of any of the Defendants proximately caused the termination of his contract. On the pendent state law claims, Defendants McGlin-

chey and Gretchen Seaman (hereinafter "the federal defendants") moved for summary judgment on the ground that they were entitled to absolute immunity because at all relevant times they were USPS employees acting within the scope of their employment. The Court declined to reach this argument and instead dismissed the claims against all three Defendants for want of jurisdiction, without prejudice to their reassertion in state court. *See Springer*, 639 F.Supp. at 1142.

Subsequently, Plaintiff brought his state claims against all three Defendants in state court. Count I of Plaintiff's new complaint alleged tortious interference with contract rights; Count II alleged libel and slander. On October 10, 1986, the federal defendants filed a petition for removal to this Court pursuant to 28 U.S.C. § 1442(a)(1) (1982); on October 21, they filed a motion to dismiss for failure to state a claim, raising the same official immunity argument that the Court had previously declined to reach. On October 23, Plaintiff filed an "Opposition to Petition for Removal," which the Court denied on November 13. But Plaintiff did not file, within the ten-day period established by Local Rule 19(c),[2] any objection to the federal defendants' motion to dismiss. On November 13, therefore, the Court granted the federal defendants' motion, leaving only Plaintiff's claims against Michael Seaman.

## II. *Plaintiff's Motion to Reconsider or for Leave to File Late Objection*

On November 26, Plaintiff moved for reconsideration of the order of dismissal or for leave to file a late objection to the federal defendants' motion to dismiss. Because no final judgment has entered, the Court must now consider whether the "interests of justice" warrant the revival of Plaintiff's claims against the federal defendants. *See Greene v. Union Mutual*

---

1. In the reported case and in documents filed by all parties in both cases, Defendant McGlinchey's name was misspelled "McGlincey." In her testimony before a grand jury investigating Plaintiff's conduct, however, she spelled out her name using an "h." The Court therefore uses that spelling in this Memorandum of Decision and Order.

2. Local Rule 19(c) declares, in pertinent part, that "[u]nless within 10 days after the filing of a motion the opposing party files a written objection thereto, he shall be deemed to have waived objection, and the Court may act on the motion."

*Life Ins. Co.*, 623 F.Supp. 295, 296–97 & n. 1 (D.Me.1985). The factors to be considered include the egregiousness of the noncompliance, the prejudice caused the moving party by the noncompliance, the excuse proffered for the noncompliance, the prejudice caused the opposing party by the granting of the motion, and the opposing party's involvement, if any, in the noncompliance. *Id.* at 297.

The noncompliance in this case is undeniably serious. "Enforcement of the Local Rule is imperative to the proper functioning of the Court and is not to be lightly regarded." *Id.* Moreover, Plaintiff's counsel has not offered any credible excuse for his failure to file any objection to the federal defendants' motion within the ten-day period established by the Rule.[3] The motion clearly indicated on its face the grounds therefor—official immunity—and clearly referred to a previously filed memorandum of law on that issue; Plaintiff's counsel's claim that he did not believe the motion required a response is, to say the least, unpersuasive. Nor did the pendency of Plaintiff's opposition to the removal petition, or the fact that Plaintiff's counsel was occupied writing a reply brief in the appeal of this Court's prior decision in this case, in any way excuse his noncompliance. When the reason for noncompliance is pure and simple neglect, Plaintiff's counsel would do better to say so forthrightly.

█ On the other side of the balance is the fact that, other than imposing needless extra work on counsel for the federal defendants, there has been no great prejudice to the moving party. Also, Plaintiff himself was in no way personally responsible for counsel's noncompliance with the Local Rule. In these circumstances, the fairest way to enforce Local Rule 19(c) is to impose sanctions directly on the person responsible for noncompliance, Plaintiff's counsel. In the interests of justice, therefore, the Court will grant Plaintiff's motion for leave to file a late objection on condition that within ten (10) days of the Order herein Plaintiff's counsel pay Two Hundred Fifty Dollars ($250.00) to counsel for the

federal defendants as a sanction for Plaintiff's counsel's noncompliance with Local Rule 19(c), said sanction to be borne by counsel and not passed on to Plaintiff.

### III. *The Federal Defendants' Motion to Dismiss*

Plaintiff's filing of an objection makes it necessary for the Court to address the merits of the federal defendants' motion to dismiss. Plaintiff has asserted two claims: tortious interference with contract rights (Count I) and libel and slander (Count II). The federal defendants move to dismiss both claims on the ground that, because they were at all relevant times acting within the outer perimeter of their line of duty, they are immune from common law tort liability. *See Barr v. Matteo*, 360 U.S. 564, 571–75, 79 S.Ct. 1335, 1339–41, 3 L.Ed.2d 1434 (1959); *Ricci v. Key Bancshares of Maine, Inc.*, 768 F.2d 456, 462–65 (1st Cir. 1985). Because both the federal defendants in their motion and the Plaintiff in his response rely on matters outside the pleadings, the Court treats the motion as one for summary judgment.

The record consists of the pleadings in this action and a memorandum and evidentiary materials that the federal defendants originally submitted in support of their motion for summary judgment in the prior action and have now resubmitted in this action. Although Plaintiff's counsel relies entirely on a memorandum and evidentiary materials that he submitted in opposition to the summary judgment motion in the prior action, he has not bothered to resubmit that memorandum or those materials in the instant action, and thus they are not formally part of the record. In what is unquestionably an excess of caution, however, and to avoid penalizing Plaintiff once again for his counsel's carelessness, the Court will consider the materials relied upon by Plaintiff as if they were in fact part of the record in this case. *See* 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2410 at 359 (1971) ("Careful counsel will introduce in evidence records

---

**3.** Nor has Plaintiff's counsel explained his failure to file any objection during the additional thirteen days that elapsed between the end of

the ten-day period and the Court's action on the motion.

from other court proceedings, but the power of a court to take judicial notice of its own records is amply established by a multitude of cases."). Further dereliction by Plaintiff's counsel in this action will simply not be tolerated. The Court's sparse reservoir of patience with professional ineptitude is now fully exhausted.

The Court's task, therefore, is to determine if a genuine issue of fact exists as to whether the federal defendants' actions fell within the outer perimeters of their respective lines of duty. The Court has no difficulty concluding that the conduct of McGlinchey meets this standard. Plaintiff's own statement of material facts does not allege a single specific act by McGlinchey that is even remotely actionable, let alone anywhere near the outer perimeter of her line of duty. McGlinchey's role appears to be limited to having telephoned an official of the USPS customer service department on December 13, 1984 to inform him that he would be receiving a letter from the selectmen of the Town of Newfield complaining about Plaintiff's conduct. This was unquestionably within McGlinchey's authority as postmistress; to the extent, if any, that federal officers are only entitled to absolute immunity for discretionary as opposed to ministerial acts, see *Ricci,* 768 F.2d at 463–65, McGlinchey's conduct was discretionary. Summary judgment for McGlinchey is therefore appropriate on the ground that she enjoys official immunity for the acts of which Plaintiff complains.

Whether Gretchen Seaman is entitled to official immunity is a more difficult question. Plaintiff complains, *inter alia,* of a letter that Seaman wrote to a USPS customer service official dated December 17, 1984, stating that "[a]s a postal service employee, I feel that, as a matter of conscience, I must write" concerning Plaintiff's alleged misconduct on the job. It is not clear that Seaman, as relief postmistress, had the authority to file a complaint about Plaintiff directly with the USPS customer service department; to the contrary, postmistress McGlinchey stated at her deposition that Seaman "should have gone through me ... she shouldn't have" written directly. McGlinchey Deposition at 41.

McGlinchey's testimony before the grand jury investigating Plaintiff's conduct was to the same effect. Record of Grand Jury Proceedings at 19. This presents a genuine issue of fact as to whether Seaman's conduct was within the outer perimeter of her line of duty; summary judgment for Seaman on official immunity grounds is therefore inappropriate. As noted below, however, Seaman is entitled to summary judgment on Count I (tortious interference with contract rights) on collateral estoppel grounds.

### IV. *Defendant Michael Seaman's Motion to Dismiss*

Defendant Michael Seaman's motion to dismiss asserts numerous grounds: (1) collateral estoppel; (2) failure to comply with the notice provision of the Maine Tort Claims Act (MTCA), Me.Rev.Stat.Ann. tit. 14, § 8107 (1964); (3) immunity under the discretionary function exception to the MTCA, *id.,* § 8111(1)(C); (4) immunity under the now-superseded "state employee personal liability" section of the MTCA, *id.* § 8103(3) (1964); (5) the truth of the alleged defamatory statements; and (6) the privileged nature of the alleged defamatory statements. The Court will address each of these arguments in turn. Because both parties rely on matters outside the pleadings, the Court treats the motion as one for summary judgment.

#### A. *Collateral Estoppel*

Seaman's collateral estoppel argument is predicated on this Court's determination, on Defendants' motion for summary judgment in the prior action, that "Plaintiff's *termination* was not the result of Defendants' actions." *Springer,* 639 F.Supp. at 1139 (emphasis in original). A determination made on a motion for summary judgment may be given collateral estoppel effect in a subsequent action between the same parties. *Restatement (Second) of Judgments* § 27, comment d (1980). Seaman now argues that because the Court has already found that Defendants did not cause the only harm alleged in the instant case—the termination of Plaintiff's contract with the USPS—Plaintiff

fails to state a claim on which relief can be granted.

Plaintiff's first response is that whatever may have been the proximate cause of the termination of his contract and the special damages incident thereto, that question is irrelevant to his claim for libel and slander, because he need not allege any special damages to recover on those claims. Under Maine law, no special damages need be alleged in a claim for libel. *Cohen v. Bowdoin,* 288 A.2d 106, 110 & n. 5 (Me.1972). Nor need they be alleged in a claim for slander *per se, id.* at 110; *see Saunders v. VanPelt,* 497 A.2d 1121, 1124–25 (Me.1985), of which the imputation of criminal conduct (such as was allegedly contained in the statements of Michael Seaman) is a species. *Niehoff v. Sahagian,* 149 Me. 396, 103 A.2d 211 (1954); *Restatement (Second) of Torts* § 571 (1976). Therefore, the lack of any proximate causal connection between Michael Seaman's statements and the termination of Plaintiff's contract is not fatal to Plaintiff's libel and slander claims. Collateral estoppel is thus no bar to Count II.

As for the claim of tortious interference with contract rights, Plaintiff argues that collateral estoppel is inapplicable because this Court's prior determination was based on concepts of proximate causation developed to govern federal constitutional and statutory claims, whereas the state law claims here at issue are governed by Maine tort law standards of proximate causation. Because this latter question was not actually litigated and determined in the prior action, Plaintiff asserts, no estoppel arises. Specifically, Plaintiff argues that, in contrast to the Court's prior conclusion as to federal law, under Maine law the USPS investigation cannot on this record be conclusively labeled an "intervening" cause interrupting the causal chain between Seaman's statements to the USPS and the termination of Plaintiff's contract. In Maine law an intervening cause is

a new and independent cause, which is neither anticipated nor reasonably foreseeable by the [defendant], is not a consequence of his negligence, is not controlled by him, operates independently of his negligence, and is the efficient cause

of the injury in the sense that the injury would not occur in its absence.

*Johnson v. Dubois,* 256 A.2d 733, 735 (Me. 1969) (quoting 38 Am.Jur. § 68 at 724; emphasis omitted). Plaintiff argues that the USPS investigation does not meet this standard because it was a foreseeable consequence of Seaman's complaint to the USPS. In Plaintiff's view, therefore, Seaman's actions were a proximate cause of the termination of Plaintiff's contract.

Although Plaintiff is correct in citing *Johnson* as a statement of Maine law regarding intervening causation in a negligence context, *Johnson* is inapplicable to Plaintiff's claim for tortious interference with contract rights. In Maine, that tort is committed "wherever a person, *by means of fraud* or intimidation procures, either the breach of a contract or the discharge of a plaintiff, from an employment, which but for such wrongful interference would have continued." *MacKerron v. Madura,* 445 A.2d 680, 683 (Me.1982) (emphasis added), *on appeal from remand,* 474 A.2d 166 (Me.1984). As the emphasized language suggests, and as *Restatement* section 766 concerning tortious interference with contract rights confirms, the relevant principles of causation in this context are those applicable to fraud generally. *See Restatement (Second) of Torts* § 766, comment o (1977) (citing *Restatement* sections 546–548, setting forth principles of causation applicable to fraudulent misrepresentation). Section 547 of the *Restatement* declares:

Recipient Relying on His Own Investigation

(1) Except as stated in Subsection (2), the maker of a fraudulent representation is not liable to another whose decision to engage in the transaction that the representation was intended to induce is not caused by his belief in the truth of the representation but is the result of an independent investigation made by him.

(2) The fact that the recipient of a fraudulent misrepresentation is relying upon his own investigation does not relieve the maker from liability if he by false statements or otherwise intentionally pre-

vents the investigation from being effective.

*Restatement (Second) of Torts* § 547 (1976).[4] Applying that principle in the context of tortious interference with contract rights, the rule is that the maker of a fraudulent misrepresentation is not liable to another for tortious interference with contract rights where the decision of a third party to breach the contract with the other or to terminate the other's employment, even if such decision was the intended result of the misrepresentation, is not caused by the third party's belief in the truth of the representation but is the result of an independent investigation made by him or her.[5]

 There being no evidence that Michael Seaman interfered with the USPS' independent investigation so as to make applicable the exception of subsection (2) of section 547,[6] the question becomes whether any determination made by this Court in the prior action combines with the rule just stated so as to insulate Michael Seaman from liability. The relevant determination is not the Court's legal conclusion, based on federal law, that "the constitutional deprivation alleged by Plaintiff was not caused in a legal sense by the Defendant's alleged conduct." *Springer*, 639 F.Supp. at 1142. Rather, the answer lies in the Court's factual findings:

Postal Inspector Moreland's deposition establishes that the incident about which the complaints were made was not specifically investigated. Moreland Deposition at 148. Rather, the routine test-letter-type investigation, described above, was undertaken. The declaration of Paul E. Vogel leaves no doubt that it was the investigative memorandum, including Plaintiff's confession, which was the basis for Plaintiff's termination:

> Based upon a Postal Service Investigative Memorandum which indicated that Beresford Springer was responsible for the obstruction and/or theft of one or more identifiable pieces of mail entrusted to his care, Mr. Springer's contract was terminated by the undersigned in my official capacity as manager of the Boston PMO.

Declaration of Paul E. Vogel, ¶ 5. Thus, although the immediate cause for the investigation was Defendants' complaints, the immediate cause of the termination was the investigative memorandum, detailing, with Plaintiff's written concurrence, his misappropriation of mail.

*Springer*, 639 F.Supp. at 1139 (footnotes omitted). In short, this Court previously determined as fact that the USPS' decision to terminate Plaintiff's employment was not caused by any belief in the truth of the

**4.** As this Court has previously recognized, "the Maine Law Court frequently applies the provisions of the *Restatement* in the absence of controlling precedent when applying the common law of Maine." *In re All Maine Asbestos Litigation*, 581 F.Supp. 963, 978 n. 18 (D.Me.1984) (citing cases). Indeed, in *Letellier v. Small*, 400 A.2d 371, 375–76 & nn. 2–3 (Me.1979), the Law Court appeared to recognize *Restatement* sections 525–549 as correctly stating the law of fraudulent misrepresentation in Maine. This Court believes that the Law Court would, if presented with the question, adopt section 547's "independent investigation" principle in the context of tortious interference with contract rights. After all, section 547 appears to do no more than state one instance of the general rule, recognized in *Letellier*, that a fraudulent misrepresentation is not actionable unless a decision to enter or refrain from entering (or, here, to terminate) a transaction is made in reliance thereon.

**5.** Comment a to section 547 adds an important caveat:

> It is not enough to relieve the maker of a fraudulent misrepresentation from liability that the person to whom it is made makes an investigation of its truth. It is only when he relies upon his investigation and does not rely upon the false statement that [recovery is precluded]. Whether he does rely upon the one or the other or in substantial part upon both (see § 546), is a question of fact and is for the jury to determine, unless the evidence clearly indicates only one conclusion.

Here, as noted in the text *infra*, the record in the previous action unequivocally indicated that the USPS did not in any way rely on Defendants' statements in deciding to terminate Plaintiff's employment.

**6.** Plaintiff's complaint alleges, on information and belief, that the Defendants intentionally misplaced pieces of "test mail" used in the USPS investigation in order to discredit Plaintiff. But Plaintiff's statement of material facts cites no evidence to substantiate this allegation.

representations made by Defendants but rather was the result of an independent investigation performed by the USPS. Collateral estoppel bars Plaintiff from relitigating this issue. Summary judgment on Plaintiff's tortious interference with contract rights claim against Michael Seaman is therefore appropriate. Similarly, summary judgment is appropriate on Plaintiff's claim against Gretchen Seaman for tortious interference with contract rights.

### B. Notice Provision of the Maine Tort Claims Act

Michael Seaman next argues that he is entitled to summary judgment on Plaintiff's libel and slander claim because of Plaintiff's alleged failure to comply with the notice provision of the Maine Tort Claims Act (MTCA), Me.Rev.Stat.Ann. tit. 14, § 8107 (1964). This argument requires consideration of three points: (1) the substance of the notice provision; (2) whether the notice provision applies to claims for intentional torts; and (3) whether Plaintiff has complied with the notice provision. The Court addresses each of these points in turn.

#### 1. Requirements of Section 8107.

Section 8107 requires that within 180 days after the accrual of a cause of action against a governmental entity, or at a later time (not to exceed two years after such accrual) for good cause shown, a claimant must file a written notice setting forth the particulars of the claim. Id. § 8107(1).[7] "Notice of claims against any political subdivision or an employee thereof shall be addressed to and filed with one of the persons upon whom a summons and complaint could be served under the Maine Rules of Civil Procedure, Rule 4, in a civil action against a political subdivision." Id. § 8107(3)(B) (emphasis added).[8] "No claim or action shall be commenced against a governmental entity or employee in the Superior Court unless the foregoing notice provisions are substantially complied with." Id. § 8107(4).

Once proper notice is filed, section 8108 gives the relevant governmental entity 120 days in which to either deny the claim or settle it in accordance with section 8109; claims not settled within 120 days are deemed denied. Under section 8106, the Superior Court has "jurisdiction over all claims permitted under this chapter [i.e., the MTCA] and not settled in accordance with section 8109." It thus appears that the Superior Court has no jurisdiction over an MTCA claim unless and until the relevant governmental entity, after timely and proper notice, denies the claim either explicitly or through 120 days of inaction.

The effect of the foregoing is that if Plaintiff was required to but did not comply with these notice provisions in asserting his libel and slander claim against Michael Seaman, the Superior Court in

---

7. The full text of section 8107(1) is as follows:
 1. Notice requirements for filing. Within 180 days after a cause of action against a governmental entity accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180–day limit, a claimant or his personal representative shall file a written notice containing:
 A. The name and address of the claimant, and the name and address of his attorney or other representative, if any;
 B. A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;
 C. The name and address of any governmental employee involved, if known;
 D. A concise statement of the nature and extent of the injury claimed to have been suffered; and

E. A statement of the amount of monetary damages claimed.
Me.Rev.Stat.Ann. tit. 14, § 8107(1) (1964).
 The full text of section 8110 is as follows:
 Every claim against a governmental entity or its employees permitted under this chapter shall be forever barred from the courts of this State, unless an action therein is begun within 2 years after the cause of action accrues.
Id. § 8110.

8. Michael Seaman, as a selectman of the Town of Newfield, Maine, would be an "employee" of a political subdivision within the meaning of § 8102(1), provided that he performed the acts complained of in his official capacity. Plaintiff has not argued that the MTCA is inapplicable on the ground that Seaman performed the acts complained of in his personal capacity. The Court therefore need not confront that question.

which Plaintiff originally filed the instant action had no jurisdiction over that claim. If the Superior Court lacked jurisdiction, then this Court could acquire none through removal.[9]

■■■■ 2. *Applicability of Section 8107 to Intentional Torts.* Plaintiff argues that he was not required to comply with section 8107's notice requirements because, in his view, the Maine Law Court in *MacKerron v. Madura,* 474 A.2d 166 (Me. 1984), held the MTCA inapplicable to claims for intentional torts. But *MacKerron* establishes no such thing; rather, the Law Court merely held that the discretionary function exception to the MTCA, section 8111(1)(C), provides no shield from liability for a police officer's intentional harm to another. *Id.* at 167.

Other provisions of the MTCA make clear that even claims for intentional torts are subject to section 8107's notice provisions. Specifically, section 8106 grants the Superior Court "original jurisdiction over all claims permitted under this chapter and not settled in accordance with section 8109," and section 8102 was recently amended, retroactive to January 31, 1977, to provide that claims "permitted under this chapter" shall be construed to include, *inter alia,* "all common law claims or actions against employees for which immuni-

ty is not expressly provided by this Act." *Id.* § 8102 (Supp.1986). This language establishes that claims alleging intentional torts are claims "permitted under this chapter" and are therefore claims over which the Superior Court would have original jurisdiction. Yet section 8107(4) makes clear that the Superior Court can acquire no jurisdiction unless there is substantial compliance with the notice provisions of section 8107. Thus, whether libel and slander are classified as intentional torts or otherwise, Plaintiff was required to comply with section 8107 in asserting his libel and slander claims against Michael Seaman.

■■■ 3. *Compliance With Section 8107.* Plaintiff's claim grows out of Seaman's involvement with drafting a December 13, 1984 letter to the USPS complaining about Plaintiff's conduct. The Court will assume that the claim accrued on or about that date.[10] The questions, then, are whether Plaintiff (1) gave notice in proper form, and (2) did so within 180 days of December 13, 1984, or, if not, then (3) whether there is "good cause why notice could not have reasonably been filed within the 180–day limit," thus permitting an extension of the filing period for up to two years after the accrual. *Id.* § 8107(1); *see id.* § 8110.

9. The parties have not contested, and the Court has assumed throughout, that if the Superior Court had jurisdiction over Plaintiff's claims against Michael Seaman and that if removal by the federal defendants was proper under 28 U.S.C. § 1442(a)(1), then this Court at the same time properly acquired jurisdiction over Plaintiff's claims against Michael Seaman. This would be so because "Section 1442(a)(1) authorizes removal of the entire case, even though only one of its controversies might involve a federal officer or agency[;] the section creates a species of ancillary jurisdiction." 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 3727 at 462 (2d ed. 1985). But if the Superior Court in fact had no jurisdiction over Plaintiff's claims against Michael Seaman, this Court could acquire none through removal. Such is clearly the case where removal is accomplished pursuant to 28 U.S.C. § 1441, *e.g., Daley v. Town of New Durham,* 733 F.2d 4, 6–7 (1st Cir.1984), and the Supreme Court has at least suggested that the same holds for section 1442(a)(1). *See Arizona v. Manypenny,* 451 U.S. 232, 242 & n. 17, 101 S.Ct. 1657, 1664, n. 17, 68 L.Ed.2d 58 (1981).

Were this an action for damages against the State of Maine, instead of against an employee of a political subdivision, the eleventh amendment would, absent waiver, bar this Court from taking jurisdiction. *See* Me.Rev.Stat.Ann. tit. 14, § 8118 (1964).

10. The relevant date is the date of publication of the libel and slander *per se,* rather than the date of occurrence of any special damages that might have resulted therefrom, because special damages are not an essential element of the claim for libel and slander *per se.*

Plaintiff's claim for tortious interference with contract rights (Count I), in contrast, accrued when his contract was terminated on May 21, 1985. The notice served on Michael Seaman on August 21, 1985 would therefore be timely with respect to this claim. This would become relevant only if the First Circuit, in deciding the appeal from this Court's decision in the previous case, makes some determination that renders inappropriate this Court's award of summary judgment on collateral estoppel grounds on Count I of the instant case.

As for the question of proper notice, the Court is prepared to conclude, first, that the complaint filed on August 13, 1985 in the prior action in this Court included sufficient information to constitute compliance with the informational requirements of section 8107(1)(A)–(E). Second, it was served upon Michael Seaman on August 21, 1985, and Seaman, as a selectman of the Town of Newfield, is authorized to be served with a summons and complaint against the Town under Me.R.Civ.P. 4(d)(5); this constitutes compliance with section 8107(3)(B) regarding who must be notified of a claim against an employee of a political subdivision. The fact that the notice to the Town and the complaint filed in this Court were one and the same, rather than the notice preceding the complaint by 120 days, may have deprived this Court of jurisdiction over the claim in the *prior* action. *See* Me.Rev.Stat.Ann. tit. 14, §§ 8106, 8108, 8109 (1964), discussed *supra*.[11] But the identity of the notice and complaint does not destroy the adequacy of the notice for purposes of section 8107. Though styled a "Complaint" rather than a "Notice of Tort Claim," the document was sufficient to notify Michael Seaman and the Town of Newfield of the particulars of Plaintiff's claim and to give the Town a chance to approve or deny the claim in accordance with sections 8106 and 8109.[12] No settlement having been reached within 120 days, the claim is deemed denied as of December 19, 1985. Notice was thus adequate to confer jurisdiction on the Superior Court over the claims in the *instant* action, filed in 1986. This Court could thus acquire jurisdiction through removal.

As for the question of timeliness of notice, it is clear that the notice served on August 21, 1985 was served more than 180 days after the accrual of the claim on or about December 13, 1984. Notice might still be found timely if Plaintiff can show "good cause why notice could not have reasonably been filed within the 180–day limit." *Id.* § 8107(1). If Plaintiff can show that he was unaware of the acts of Michael Seaman constituting the alleged libel and slander until 180 days or less before the filing of notice on August 21, 1985, then the Court might find the "good cause" standard to be met. On the record on this motion, however, it is impossible to determine when Plaintiff learned of those acts of Michael Seaman of which he complains. The Court will therefore defer for twenty (20) days a ruling on that portion of the motion that alleges failure to comply with section 8107 in order to permit the parties to produce forthwith the evidence required to make this determination. The Court emphasizes that the burden is on Plaintiff to establish the facts essential to the Court's jurisdiction; absent such facts, the action must and will be dismissed for want of subject matter jurisdiction.

## C. *Remaining Grounds for the Motion to Dismiss*

Michael Seaman raises numerous additional grounds for his motion for summary judgment on the libel and slander claims, all of which grounds may be disposed of in summary fashion. First, he claims immunity under the discretionary function exception of the MTCA, Me.Rev. Stat.Ann. tit. 14, § 8111(1)(C) (1964). But Seaman has failed to provide any evidentiary support for his assertion that his acts were discretionary. Moreover, on the record there is a genuine issue of fact as to whether Seaman's actions were racially motivated; this would appear to bear on the question whether Seaman's actions were discretionary. Nor has Seaman cited any authority to establish that prior to the passage of the MTCA a municipal employee enjoyed common law immunity for intentional libels or slanders. *Cf. MacKerron,* 474 A.2d 166 (Me.1984) (analyzing scope of MTCA discretionary function exception in

---

**11.** Although the prior action was filed in this Court rather than the Superior Court, compliance with section 8107's notice provisions is as essential to this Court's jurisdiction as to that of the Superior Court.

**12.** In *Erickson v. State,* 444 A.2d 345 (Me.1982), the Law Court stated that "[t]he general purposes of a notice requirement are to save needless expense and litigation by providing an opportunity for amicable resolution of disputes, and to allow the defendant to fully investigate claims and defenses." *Id.* at 349–50 (citing cases). Plaintiff's "Complaint" adequately served these functions, under the circumstances of this case.

terms of the relevant public employee's common law immunity for intentional torts). Summary judgment on this ground is therefore inappropriate.

 Second, Seaman argues that section 8103(3) of the MTCA, Me.Rev.Stat. Ann. tit. 14, § 8103(3) (1964), shields him from liability. The version of that section in effect at the time of the acts complained of limited the liability of state employees for negligent acts causing property damage, bodily injury, or death.[13] Seaman asserts that because Plaintiff did not suffer property damage, bodily injury, or death, section 8103(3) precludes him from recovering. But section 8103(3) is inapplicable to this case, for three separate reasons. First, Seaman was an employee of a political subdivision, whereas the version of section 8103(3) then in effect applied only to state employees. *Cf. id.* § 8102(3), (4) (differentiating clearly between the state and its political subdivisions). Moreover, section 8103(3) as originally passed and as now amended refers only to liability for negligent acts, *see MacKerron*, 474 A.2d at 167; it in no way limits an employee's liability for intentional acts (such as those here alleged) to those cases involving property damage, bodily injury, or death. Finally, section 8103(3) as originally passed and as now amended limits an employee's liability only in cases where the employing governmental entity is immune under section 8103. *Cf. id.* Seaman has not established that the Town of Newfield is immune and thus section 8103(3) does not apply.

Third, Seaman argues that the alleged defamatory statements were true. This is clearly a disputed question of fact and may not be resolved on this motion for summary judgment.

 Fourth, Seaman argues that the alleged defamatory statements were conditionally privileged. He cites *Restatement* *(Second) of Torts* § 598A (1976) (creating conditional privilege for defamatory communications required or permitted in the performance of the official duties of an inferior administrative officer) and various other conditional privileges recognized by *Restatement* sections 594, 595, and 598. The law could not be clearer, however, that a conditional privilege may be lost through abuse, *id.* §§ 593(b), 599, one form of which is publication of defamatory matter with knowledge of its falsity or with reckless disregard as to its truth or falsity. *Id.* § 600. A conditional privilege may also be lost if the publisher does not act for the purpose of protecting the interests for the protection of which the privilege is given. *Id.* § 603. On this record, genuine issues of fact remain as to whether Seaman abused his privilege under the rules of sections 600 and 603. At this stage, therefore, summary judgment on the libel and slander claim on the basis of privilege is unwarranted.

 Seaman also argues that his participation in writing a letter of complaint to the USPS is privileged because to impose liability therefor would infringe upon his first amendment right to petition the government for the redress of grievances. He cites *Shoultz v. Monfort of Colorado, Inc.*, 754 F.2d 318, 321 (10th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1259, 89 L.Ed.2d 569 (1986); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 614–15 (8th Cir.1980); and *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1342–46 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). But none of these cases recognized the absolute privilege for which Seaman here contends. This Court will not do so on this motion, particularly where further factual development may make it unnecessary to decide the constitutional question.

---

**13.** The version of section 8103(3) in effect at the time of the acts complained of reads as follows:

3. *Personal liability; state employee.* Except as otherwise expressly provided by section 8111 or by any other statute, an employee of the State acting within the course and scope of his employment shall be personally liable for his negligent acts or omissions causing property damage, bodily injury or death in instances in which the State is immune under this section only to a limit of $10,000 for any and all such claims arising out of a single occurrence and shall not be liable for the amount in excess of that limit on any such claim.

Me.Rev.Stat.Ann. tit. 14, § 8103(3) (1964). This section has now been amended, effective March 25, 1986, so as to apply, in addition, to employees of political subdivisions. *Id.* § 8103(3) (Supp.1986).

## V. *Order*

It is therefore ORDERED that:

(1) Plaintiff's motion for leave to file a late objection be, and is hereby, GRANTED on condition that within ten (10) days of the Order herein Plaintiff's counsel pay Two Hundred Fifty Dollars ($250.00) to counsel for the federal defendants as a sanction for Plaintiff's counsel's noncompliance with Local Rule 19(c), said sanction to be borne by counsel and not passed on to Plaintiff; and the Court's Order of November 13, 1986, granting the motion to dismiss of Defendants McGlinchey and Gretchen Seaman be, and is hereby, VACATED upon occurrence of the aforesaid condition;

(2) Defendant McGlinchey's motion for summary judgment on grounds of official immunity be, and is hereby, GRANTED;

(3) Defendant Gretchen Seaman's motion for summary judgment on grounds of official immunity be, and is hereby, *DENIED* without prejudice to its reassertion before trial if warranted by further development of the factual record;

(4) Defendant Gretchen Seaman's motion for summary judgment on Count I (tortious interference with contract rights) be, and is hereby, GRANTED on grounds of collateral estoppel;

(5) Defendant Michael Seaman's motion for summary judgment on Count I (tortious interference with contract rights) be, and is hereby, GRANTED on grounds of collateral estoppel; and

(6) A ruling on Defendant Michael Seaman's motion for summary judgment on Count II (libel and slander) be, and is hereby, DEFERRED for twenty (20) days, after which Count II will be dismissed for want of subject matter jurisdiction unless Plaintiff has demonstrated good cause for failure to file an MTCA notice within 180 days of the accrual of his cause of action.