Robert **LEARNARD**, Plaintiff,

v.

The **INHABITANTS OF THE TOWN OF VAN BUREN, et al.,** Defendants.

No. 01–CV–34–B–S.

United States District Court, D. Maine.

Aug. 24, 2001.

Daniel G. Lilley, Daniel G. Lilley Law Offices, P.A., Portland, ME, for Robert Learnard, plaintiff.

Robert M. Hayes, Moon, Moss, McGill, Hayes & Shapiro, P.A., Portland, ME, for Van Buren, Inhabitants of the Town of, defendant.

Robert M. Hayes, (See above), for Larry Cote, Individually and in his capacity as Town Manager and Employee of the Town of Van Buren, defendant.

Robert M. Hayes, (See above), for Glenn Vaillancourt, Individually and in his capacity as Town Councilor and Employee of the Town of Van Buren, defendant.

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

SINGAL, District Judge.

Before the Court is Defendants' Motion to Dismiss the Complaint (Docket # 5). Defendants state that they make the Motion pursuant to Rule 12. Based on the language of the Motion, it is clear that it was crafted to oppose Counts I and II of the Complaint on the ground that they fail to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), and that it challenges Counts III, IV, V, VI and VII for both failing to state a claim and for lack of subject matter jurisdiction, pursuant to Rule 12(b)(6) and Rule 12(b)(1) respectively. The Court GRANTS IN PART Defendants' Motion to Dismiss as discussed below.

## I. BACKGROUND

Plaintiff Robert Learnard began working as the public works director for Defendant Town of Van Buren, Maine in 1996. Defendant Larry Cote was the town manager of Van Buren, as well as a town councilor. The other individual Defendants, Glenn Vaillancourt, Roland Ayotte, Richard Daigle and "Jimmie" Don Madore, also served as elected town councilors.

Learnard claims that the Town Council terminated his employment on February 28, 2000, without prior notice and without a pre-termination hearing. Defendants claim that they did not fire him on February 28th, but that they simply notified him that they were planning to dismiss him. In any event, the parties concur that on March 4, 2000, Learnard requested a hearing to challenge his dismissal pursuant to his employment contract and the Van Buren town charter. Thereafter, the Town Council agreed to hold a hearing on the matter and placed him on administrative leave with pay pending the hearing. The

factual record on this point is muddled: it is not clear when the Town placed him on administrative leave with pay, and neither the employment contract nor the town charter are part of the record.

Initially, the Town Council scheduled a hearing for March 21, 2000. At some point, Learnard retained counsel, who asked that the hearing be rescheduled. On March 20th, Learnard received a letter tentatively rescheduling the hearing for 7 p.m. March 30, 2000, which suited both Learnard and his attorney. On March 22, 2000, however, members of the Town Council again rescheduled the hearing for 7 p.m. March 29, 2000, despite Plaintiff's objection that the new date was "at a time they knew the Plaintiff and his counsel could not attend." (Compl. ¶ 12 (Docket # 1).) Unwilling to alter the March 29th hearing date, the Town Council held the hearing as scheduled. Neither Learnard nor his attorney were present. At the conclusion of that hearing, the Town Council decided to terminate Learnard's employment in absentia. The Town stopped paying Learnard's wages on June 14, 2000.

In April of 2000, Learnard appealed his termination to the state court by filing an action pursuant to Maine Rule of Civil Procedure 80B. On August 31, 2000, the Maine superior court held that Learnard's due process rights had been violated and remanded the matter to the Town Council of Van Buren to provide him a full hearing during which he could present evidence and confront witnesses. The second hearing was held on October 30, 2000. Learnard alleges that at this second hearing, "[t]he hearing pool was not comprised of disinterested or impartial parties." (Compl. ¶ 19 (Docket # 1).) At the conclusion of this second hearing, Defendants, "acting against the weight of the evidence, in an arbitrary and capricious manner,

once again affirmed and ratified their decision to terminate Plaintiff." (*Id.* ¶ 20.)

Learnard also alleges that individual Defendants Cote and Vaillancourt have defamed him by telling third parties that Learnard was a liar and a thief and that he had stolen town property. Learnard also claims that Defendant Cote broke into Learnard's property in St. Leonard, Canada in an effort to find supposedly stolen town property to use against him.

Plaintiff filed a seven-count Complaint in which he claims that Defendants committed the following wrongs: violating Plaintiff's procedural due process rights, actionable pursuant to section 1983 of the Civil Rights Act, 42 U.S.C. § 1981 *et seq.* (Count I); violating his due process rights under the Maine Constitution, actionable pursuant to section 4682 of the Maine Civil Rights Act ("MCRA"), 5 M.R.S.A. § 4681 *et seq.* (Count II); civil conspiracy (Count III); defamation (Count IV); intentional infliction of emotional distress (Count V); invasion of privacy (Count VI); and wrongful discharge (Count VII).

## II. SUBJECT MATTER JURISDICTION

### A. 12(b)(1) Standard

When deciding whether to dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court construes the complaint "liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States,* 99 F.3d 1200, 1209–10 (1st Cir.1996). Also, the Court "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted." *Id.* at 1210. Because federal courts are courts of limited jurisdiction, the plaintiff has the burden of demonstrating the existence of federal jurisdiction. *See, e.g., Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998).

## B. Discussion

Plaintiff brings multiple claims against Defendants sounding in tort: civil conspiracy (Count III), defamation (Count IV), intentional infliction of emotional distress (Count V), invasion of privacy (Count VI), and wrongful discharge (Count VII). Defendants argue that the Court should dismiss all of these common law state tort claims for failure to give them adequate notice as mandated by the Maine Tort Claims Act ("MTCA"), 14 M.R.S.A. § 8101 *et seq.* The MTCA provides explicit requirements for a claimant to bring tort actions against state governmental entities or state employees. First a claimant files with the state agency a notice that must contain, inter alia, "a concise statement of the basis of the claim, including the date, time, place, and circumstances of the occurrence ... [and] the name of the employee involved, if known ." *Pepperman v. Barrett*, 661 A.2d 1124, 1126 (Me.1995) (citing 14 M.R.S.A. § 8107). Plaintiff filed a notice of claim on or about February 5, 2001, in which he described his version of the facts of the case and demanded $1,000,000 in damages. (*See* Notice of Claim (Docket # 5, Ex. D).)

■■■ Defendants accurately note that Plaintiff's notice of claim does not mention Defendant Madore at all and that it fails to describe with specificity the wrongs that Defendants Ayotte and Daigle allegedly committed against Plaintiff. The Court, however, does not find these omissions to be fatal. Maine law requires a notice to include a "concise" statement of a claim for the purpose of "enabl[ing] the governmental entity to investigate and evaluate claims for purposes of defense or settlement." *Pepperman*, 661 A.2d at 1126. Plaintiff's notice of claim attacks numerous actions allegedly undertaken by Van Buren's Town Council, of which Defendants Madore, Ayotte and Daigle were members. By addressing the alleged wrongs committed by the Town Council, the substance of Plaintiff's notice of claim enabled the members of the Town Council to investigate and evaluate his claims against them. *See id.* Therefore, it would not serve the statutory purpose to dismiss Plaintiff's tort claims against the three individual Defendants for such a technical oversight.

Even though the Court finds that the substance of the notice of claim satisfies the MTCA's notice requirement, Defendants also argue that the timing of the notice of claim renders it insufficient. The MTCA establishes that once a claimant files a notice of claim with the appropriate governmental body, that body has 120 days to either approve or deny the monetary damages claimed. *See* 14 M.R.S.A. § 8108. Plaintiff filed his notice of claim on or about February 5, 2001, then filed the instant action only fifteen days later on February 20, 2001.

Plaintiff contends that the 120–day waiting period is inappropriate under the circumstances of this case. In November of 2000, Plaintiff and Defendants, through counsel, were negotiating a settlement agreement. Plaintiff's attorney sent a letter to Defense counsel informing him that that Plaintiff would file suit if they could not settle the matter. (*See* Nov. 27, 2000 Letter from Daniel Lilley to Robert Hayes (Docket # 9, Ex. 2).) The letter lists alleged damages for several aspects of Plaintiff's claims, but makes no concrete settlement demand. (*See id.*) The letter implies that Plaintiff would like more than $200,000 total damages. (*See id.*)[1]

---

1. The letter is divided into three sections. Section I, entitled "Back Pay," states a total dollar amount of $9,955.92. Section II of the letter, "Costs & Attorney Fees," features a figure of $33,411.84. Section III, "Impending Damages (If Suit Is Filed)," includes the

In a sworn affidavit, Plaintiff's counsel states that in December of 2000 he spoke with Defendants' attorney, who said "that his client [sic] would not now or in the future settle this case unless it was a global settlement and that they would only be able to pay some portion of his lost wages and counsel fees, but in no respect would they ever settle for six figures...." (Daniel Lilley Aff. ¶ 3 (Docket # 9, Ex. 3).) Based on this statement allegedly made by Defense counsel, and the fact that Defendants apparently have expressed no indication that they would settle for more than $100,000, Plaintiff argues that the 120–day waiting period would serve no purpose. Defendants' alleged persistence in refusing to settle for more than $100,000 suggests that it is a foregone conclusion that Defendants would deny the notice of claim for $1,000,000.

■ The purpose of the MTCA's notice requirements, again, "is to enable the governmental entity to investigate and evaluate claims for purposes of *defense or* settlement." *Pepperman,* 661 A.2d at 1126 (emphasis added). The 120–day waiting period operates not only to provide state governmental bodies time to negotiate settlements, but also the waiting period affords governmental entities extra time to prepare their legal defenses. *See id.* (citing *Faucher v. City of Auburn,* 465 A.2d 1120, 1123 (Me.1983) (one of the purposes of the MTCA's notice requirements is "to allow the defendant to fully investigate claims and defenses")). Pursuant to the MTCA, Defendants were entitled to 120 days, rather than fifteen days, to muster their defenses. Moreover, the only court to have considered section 8108 has found that it acts as a jurisdictional bar if a plaintiff fails to wait 120 days before filing suit. *See Springer v. Seaman,* 658 F.Supp. 1502, 1510 (D.Me.1987). Because

the 120–day period is statutorily prescribed, courts are divested of subject matter jurisdiction if it is ignored. *See id.* Thus, the Court must dismiss Plaintiff's state law tort claims without prejudice. Because the Court finds that it lacks jurisdiction over the state tort claims, it does not reach Defendants' alternate arguments against those claims.

## III. WHETHER THE COMPLAINT STATES A CLAIM

### A. 12(b)(6) Standard

Generally, a court may dismiss a claim pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted only if it clearly appears that, on the facts alleged in the complaint, the plaintiff cannot recover on any viable theory. *See Gonzalez–Morales v. Hernandez–Arencibia,* 221 F.3d 45, 48 (1st Cir.2000). When considering a motion to dismiss, a court must accept as true all of a plaintiff's well-pleaded factual averments and indulge every reasonable inference in the plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). "We need not, however, grant credence to 'conclusory allegations, improbable inferences, and unsupported speculation.'" *King v. Town of Hanover,* 116 F.3d 965, 968 (1st Cir.1997) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).

### B. Discussion

Even though the Court finds that it lacks jurisdiction over Counts III through VII, Counts I and II are a different matter. Count I alleges that Defendants violated Plaintiff's procedural due process rights, actionable pursuant to section 1983 of the Civil Rights Act, 42 U.S.C. § 1981 *et*

amount of $173,183.68. The total of these three sums is $216,551.44.

*seq.* Count II claims that Defendants violated his due process rights under the Maine Constitution, actionable pursuant to section 4682 of the Maine Civil Rights Act ("MCRA"), 5 M.R.S.A. § 4681 *et seq.* (Count II). Plaintiff asserts that Count I of the Complaint establishes federal question subject matter jurisdiction.

1. Section 1983 Claim

a. Procedural Due Process

■ Defendants argue that Count I fails to state a claim because there has been no deprivation of Plaintiff's procedural due process rights.[2] In Count I, Plaintiff maintains that Defendants violated his due process rights in two ways: (1) by dismissing him from his position as a municipal employee without a pre-termination hearing, and (2) by holding a termination hearing at a time when they knew that Plaintiff's counsel was unavailable.

■ The Due Process Clause of the Fourteenth Amendment mandates that State governmental entities, including municipalities, cannot deprive individuals of property without providing them procedural due process.[3] Thus, to state a claim of a procedural due process violation, Plaintiff must demonstrate (1) that he had a protected property interest and (2) that State actors deprived him of that property interest without providing him adequate procedural safeguards. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 568–69, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiff argues that his employment with the Town of Van Buren constituted a property interest protected by due process. *See, e.g., Krennerich v. Inhabitants of Bristol,* 943 F.Supp. 1345, 1353 (D.Me.1996) (finding that, based upon the facts, plaintiff's employment with municipality constituted a property interest). Defendants have not disputed this contention. Rather, Defendants attack the second element of Plaintiff's procedural due process claim by arguing that Plaintiff received all the procedure to which he was due.

■ Normally, before the government may discharge someone who has a property interest in his continued employment, the "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546,

---

**2.** Plaintiff asserts in a brief that Defendants also have violated his substantive due process rights. (*See* Pl. Opp'n to Defs.Mot. to Dismiss at 8 (Docket # 9).) This argument is inapposite. First, Count I of the Complaint articulates a cause of action related to procedural due process, not substantive due process, and the two notions are entirely distinct. Second, even though the "Statement of Facts" section of the Complaint alleges that the outcome of the second hearing was arbitrary, capricious and against the weight of the evidence, neither Count I nor any of the other Counts in the Complaint address the determination made by Defendants after the second hearing. Count I, Plaintiff's only federal claim, asserts that he was fired without notice or a prior hearing and that Defendants failed to give him an opportunity to present his side of the matter. Third, even if Plaintiff had made a

claim of a substantive due process violation, his allegations do not suggest that any fundamental rights have been transgressed. Substantive due process claims generally have something to do with "matters relating to marriage, family, procreation, and the right to bodily integrity" rather than property or employment issues. *See Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

**3.** Plaintiff invokes not only the Fourteenth Amendment Due Process Clause, but also the Fifth Amendment Due Process Clause. The Fifth Amendment Due Process Clause applies to the federal government rather than a state government, and therefore is inapplicable under these circumstances.

105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Plaintiff maintains that because Defendants set the first hearing for a time when they knew that Plaintiff's attorney could not appear, Defendants failed to provide Plaintiff with an adequate opportunity to respond to the Town's grounds for dismissal. Plaintiff prevailed with this argument in state court and Defendants do not counter it here.

Instead, Defendants focus their arguments on the availability of post-termination remedies. They reason that because Maine Rule 80B provides Plaintiff with a means of appealing adverse employment decisions, any deficiency in the pre-termination procedure is irrelevant. After all, Plaintiff successfully appealed once via Maine Rule 80B and he could have filed another such appeal after the second hearing.

■ Defendants' arguments rely on the so-called *"Parratt–Hudson* doctrine," *e.g., Brown v. Hot, Sexy & Safer Prods.,* 68 F.3d 525, 535 (1st Cir.1995), which is based on two Supreme Court rulings, *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The *Parratt–Hudson* doctrine holds that when government actors engage in "random and unauthorized conduct" not amenable to a pre-deprivation hearing, a claimant cannot state a claim for a procedural due process violation if adequate post-deprivation remedies exist. *See, e.g., Lowe v. Scott,* 959 F.2d 323, 340 (1st Cir.1992).

> When a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials ... the Court has repeatedly emphasized that the due process inquiry is limited to the issue of the adequacy of postdeprivation remedies provided by the state.

*Id.* Based on this line of cases, Defendants argue that the Town Council's actions, as alleged in the complaint, constituted, at most, random and unauthorized conduct, and therefore the Court should only look to the adequacy of the post-termination remedy—the availability of a Maine Rule 80B appeal.

The record, however, has not established that Defendants' conduct as alleged by the Plaintiff was random or unauthorized. Although the state court found that Plaintiff's due process rights had been violated, that does not necessarily mean that Defendants' actions were random or unauthorized. In fact, Defendants make no argument regarding how their actions may be viewed as random or unauthorized. To invoke the *Parratt–Hudson* defense, it is incumbent upon Defendants to demonstrate that the alleged actions unforeseeably violated "established procedure." *See, e.g., Zinermon v. Burch,* 494 U.S. 113, 126, 136, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (a procedural due process claim inquires into the "procedural safeguards built into the statutory or administrative procedure of effecting the deprivation").

■ Plaintiff alleges that after being fired on February 28, 2000, he filed an appeal pursuant to the charter of Van Buren, a copy of which is not part of the record. If the town charter authorizes Defendants to dismiss public employees prior to a hearing, then Defendants cannot argue that their conduct was random or unauthorized. Furthermore, it is not clear that it was random or unauthorized when Defendants rescheduled the first hearing for March 29, 2000; Defendants point to no established procedure compelling town councils to set hearings at times conve-

nient to claimants' lawyers.[4] Quite simply, the Court cannot rule that Defendants violated established procedures without the parties informing the Court as to what those established procedures were. *See Lowe*, 959 F.2d at 341 ("*Zinermon* requires that courts scrutinize carefully the assertion by state officials that their conduct is 'random and unauthorized' within the meaning of *Parratt* and *Hudson*, where such a conclusion limits the procedural due process inquiry under § 1983 to the question of the adequacy of state post-deprivation remedies."). If Defendants can demonstrate that the alleged actions were random and unauthorized departures from established procedures, then the *Parratt–Hudson* doctrine may defeat Plaintiff's due process claim. *See O'Neill v. Baker*, 210 F.3d 41, 51 (1st Cir.2000) (Selya, J. concurring) ("the status of the *Par-*

*ratt–Hudson* line of cases, in the albedo of *Zinermon*, is at best uncertain."). At this point, however, the factual record is far from complete. Defendants have not yet filed a Rule 56 motion, which would be a far more suitable vehicle for the Court to consider Defendants' fact-based arguments against Count I. At this point in the proceedings, the Court finds that Count I of the Complaint states a claim upon which relief can be granted.[5]

b. Costs Associated with Maine Rule 80B Appeal

 As part of his procedural due process claim, Plaintiff also demands reimbursement for the costs associated with litigating his Maine Rule 80B appeal to the state court. Plaintiff reasons that but for Defendants allegedly violating his proce-

4. In the Complaint, Plaintiff states that Larry Cote is the town manager of Van Buren and therefore is authorized by Maine statute to appoint and remove town employees, such as the public works director. (*See* Compl. ¶ 5 (citing 30–A M.R.S.A. § 2636) (Docket # 1).) This provision of Maine law establishes that town managers have "exclusive authority to remove for cause, after notice and hearing," town employees. *See id.* § 2636(14). Based on this statute, Defendants were obligated to give Plaintiff notice and to hold a hearing prior to terminating him. If the charter of Van Buren conflicts with section 2636, however, then it is not clear that Defendants' conduct was random or unauthorized. Moreover, section 2636 does not make clear that Defendants erred in scheduling the first hearing at a time convenient for them rather than convenient for Plaintiff's lawyer. *See, e.g., Barber v. Town of Fairfield*, 460 A.2d 1001, 1005 (Me.1983) (the plaintiff's procedural due process rights were violated not because the town scheduled the termination hearing on a day when his attorney of choice was unavailable, but because a key witness was unavailable on the day of the hearing).

5. In addition, Defendants argue that the individual Defendants—Cote, Vaillancourt, Ayotte, Daigle and Madore—are entitled to abso-

lute immunity because they acted in a quasi-judicial function when they voted to terminate Plaintiff during both the first and second hearings. *See, e.g., Richards v. Ellis*, 233 A.2d 37, 38 (Me.1967). Governmental agents can enjoy immunity against liability for actions of a judicial, decision-making nature. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 9–10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). That immunity, however, does not apply when a state officer acts outside of his quasi-judicial capacity. *See, e.g., id.* The conduct of which Plaintiff complains in his procedural due process claim, however, does not relate to how the individual Defendants allegedly acted in their roles as quasi-judicial decision-makers. The procedural due process claim attacks the termination without prior notice or a prior hearing and the rescheduling of the first hearing at a time when the members of the Town Council knew that Plaintiff's attorney could not appear. Count I does not challenge Defendants' conduct during those hearings or the decisions that they made. (*See supra* footnote 2.) Moreover, by raising the *Parratt–Hudson* defense, Defendants undermine their immunity defense; if the individual Defendants were acting in a random and unauthorized manner, then it stands to reason that they were acting outside the scope of their quasi-judicial authority.

dural due process rights, he would not have needed to go through the expense of appealing the first termination hearing. Defendants argue that it is inappropriate for Plaintiff to seek such costs in the instant federal action, and that instead Plaintiff could have and should have requested any costs from the state superior court. *See* Maine Rule 54(d) ("Costs shall be allowed as of course to the prevailing party, as provided by statute and by these rules, unless the court otherwise specifically directs."). The Court agrees.

Plaintiff argues that he is seeking costs associated with the 80B appeal in the instant action rather than in the state action "to avoid piecemeal litigation in both state and federal courts." (Pl. Opp'n to Defs. Mot. to Dismiss at 11 (Docket # 9).) Plaintiff, however, could have avoided litigating this matter of costs in a piecemeal fashion simply by moving for reimbursement of costs with the state court after it remanded Plaintiff's case. The state court is in a far better position than this Court to determine whether Plaintiff is entitled to the costs that he requests. Principles of comity compel the Court to abstain from interfering with the state proceeding. *See, e.g., Ford Motor Co. v. Meredith Motor Co.,* 257 F.3d 67 (1st Cir.2001). The Court finds that it is inappropriate for Plaintiff to seek costs for the Maine Rule 80B appeal in the instant action. As a matter of law, the Court dismisses Count I to the extent that it demands reimbursement of costs associated with the Maine Rule 80B appeal.

### c. Plaintiff's Request for Relief Pursuant to 26 M.R.S.A. § 626

■ Also as part of Count I, Plaintiff requests relief pursuant to a Maine statute, 26 M.R.S.A. § 626, which authorizes treble damages for unpaid wages. Plaintiff implies that Defendants erred in ceasing issuance of his paychecks on June 14, 2000, and that they should have continued to pay his wages until October 30, 2000. Defendants argue that it is improper to seek relief pursuant to the Maine unpaid wages statute as part of a 42 U.S.C. § 1983 procedural due process claim. The Court agrees.

The Maine statute authorizes employees to sue their employers for failing to pay wages. *See* 26 M.R.S.A. § 626. The statute has nothing to do with procedural due process. *See id.* Section 1983 plaintiffs who prevail on their procedural due process claims can receive damages, *see, e.g., Maldonado Santiago v. Velazquez Garcia,* 821 F.2d 822, 829 (1st Cir.1987), but if a plaintiff establishes liability under section 1983, that does not mean that the plaintiff is entitled to an amount of damages established by state statute. *Cf. Kolakowski v. Neumann,* No. 98–8244, 1999 WL 1427709, at *3–4 (S.D.Fla. Sept.10, 1999) (treating federal procedural due process claim and state unpaid wages claim separately). The Court finds that it is inappropriate for Plaintiff to invoke the Maine statute as a component of the damages requested under Count I. As a matter of law, the Court dismisses without prejudice the portion of Count I seeking relief pursuant to 26 M.R.S.A. § 626.

### 2. Maine Civil Rights Act

■ In Count II of the Complaint, Plaintiff claims that Defendants violated his rights under Sections 1 and 6 of Article I of the Maine Constitution, actionable pursuant to the Maine Civil Rights Act ("MCRA"), 5 M.R.S.A. § 4681 *et seq.* Plaintiff alleges that Defendants violated his rights under the Maine Constitution by denying him "property and liberty interests without due process of law." (*See* Compl. ¶ 30.) Based on this language, the Court infers that Plaintiff is trying to

make a procedural due process claim pursuant to the MCRA in Count II, in addition to the procedural due process claim in Count I under 42 U.S.C. § 1983.

Because the Court herein finds that Count I's procedural due process claim survives dismissal, at first it would seem appropriate that Plaintiff's MCRA claim should survive as well. This is not necessarily the case. Although the MCRA was patterned after 42 U.S.C. § 1983, *see, e.g., Grenier v. Kennebec County*, 733 F.Supp. 455, 458 n. 6 (D.Me.1990), it differs from the federal Civil Rights Act in several important aspects. The MCRA establishes a private right of action against anyone who

> intentionally interferes or attempts to intentionally interfere by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of physical force or violence against a person, damage or destruction of property or trespass on property with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State or violates section 4684–B. . . .

5 M.R.S.A. § 4682.

Defendants argue that Plaintiff cannot maintain an MCRA claim because Plaintiff's allegations do not suggest that any of the Defendants have committed acts of physical force, violence, destruction of property or threatening behavior. Plaintiff's sole allegation that potentially fits within the purview of the MCRA is his claim that Defendant Cote broke into his property located in St. Leonard, Canada. The implication is that Defendant Cote allegedly trespassed on Plaintiff's Canadian property in an effort to find evidence to use against Plaintiff during his termination hearings before the Town Council in Van Buren.

Defendants argue that although section 4682 may apply to Cote's alleged trespass, the MCRA claim should be dismissed against the remaining Defendants. Plaintiff, however, makes allegations that Defendants conspired against him, suggesting that the other Defendants played a part in the alleged trespass. *See, e.g., Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir.1980) (plaintiffs may maintain conspiracy claims pursuant to section 1983). Thus far, the evidentiary record on this matter is far from developed, and at trial the burden would be on Plaintiff to demonstrate that Defendants conspired to trespass on his land as part of a scheme to violate his procedural due process rights. Viewing the facts in Plaintiff's favor, the Court finds that Count II states a claim upon which relief can be granted.[6]

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART Defendants' Motion to Dismiss (Docket # 5) as follows. The Court DISMISSES Count I to the extent that it requests reimbursement for costs associated with the Maine Rule of Civil Procedure 80B appeal. The Court DISMISSES WITHOUT PREJUDICE Count I to the extent that it requests damages pursuant to the Maine unpaid wages stat-

---

6. In addition, Defendants cursorily argue that it is inappropriate for this Court to entertain Count II because the alleged trespass occurred in a foreign nation. Defendants do not go so far as to argue that the Court lacks jurisdiction over the matter. In any event,

Plaintiff implies that the alleged trespass was a component of Defendants' alleged acts depriving him of his procedural due process rights, which allegedly happened within the United States.

**46**

ute, 26 M.R.S.A. § 626. The Court DIS-MISSES WITHOUT PREJUDICE Counts III, IV, V, VI and VII.

In addition, the Court sua sponte extends the deadline to October 18, 2001 for filing all dispositive motions and all *Daubert* and *Kumho* motions challenging expert witnesses with supporting memoranda.[7] (*See* Scheduling Order (Docket # 6).)

SO ORDERED.

---

**7.** *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Such motions shall include any challenges to lack of qualifications, scope of testimony and any other issues addressed by these decisions.