724 F.Supp. 1069 (1989)
Osiris Luis RIVERA DIAZ, Plaintiff,
v.
PUERTO RICO TELEPHONE CO.; Pedro Galarza, the President of the Puerto Rico Telephone Company; Jose C. Sanchez and Jose Ramon Diaz, in their personal capacities, Defendants.
Civ. No. 89-0286(PG).
United States District Court, D. Puerto Rico.
November 1, 1989.
Francisco R. Gonzalez, Santurce, P.R., for plaintiff.
Humberto Guzman Rodriguez, San Juan, P.R., for defendants.

OPINION AND ORDER
PEREZ-GIMENEZ, Chief Judge.
Plaintiff, Osiris Luis Rivera Diaz, brought an action for damages under 42 U.S.C. §§ 1981 and 1983 for alleged violations of the First, Fifth and Fourteenth Amendments to the Constitution of the United States and a pendent breach of contract claim under Puerto Rico law. The action was filed against the Puerto Rico *1070 Telephone Company ("PRTC") and against Messrs. Pedro Galarza, José C. Sánchez and José Ramón Díaz ("individual defendants") in their personal capacity.
Defendants moved to dismiss the action. Plaintiff filed his opposition.

FACTS AS ALLEGED BY PLAINTIFF
Plaintiff is a self proclaimed pro-independence advocate and past president of the Puerto Rican Independence Party of Carolina from 1968 to 1972. Rivera Díaz organized Telco Construction, Inc., of which he is the sole stockholder and owner to comply with PRTC's requirements to be certified as a contractor. On or about 1980 he signed the first contract to install public telephone booths. The contract object of this suit was signed on May 21, 1986, for a term of three years. Defendants are all members of the Popular Democratic Party. On or about June or July 1987 co-defendant Sánchez asked plaintiff to buy $400 worth of Popular Democratic Party ("PDP") fund-raising tickets, which he refused to pay. Plaintiff alleges that PRTC has refused to pay plaintiff's company for services rendered in the installation of ten telephone booths because of his refusal to co-operate with the PDP fund-raising activity. The alleged reason given by PRTC for its refusal to pay the services rendered that construction defects exist in the ten installations, is, according to plaintiff, a pretext to hide the political discrimination. Subsequently, plaintiff was informed by co-defendant Sánchez that he will not be assigned any other jobs unless he reconstructed the defective installations. Plaintiff further contends that it was the policy of the PRTC and the Individual Defendants to give preference to members of the PDP and to discriminate against members of other political parties. While practicing such discrimination, plaintiff claims, the defendants "terminated the contracted works plaintiff's corporation did for the Puerto Rico Telephone Company"[1] and, in so doing, deprived him of his civil rights and of the equal protection of the laws. Plaintiff is also claiming damages for breach of contract.

§ 1983 CLAIM
To state a claim under 42 U.S.C. § 1983, the complaint must allege that the defendants deprived him of a right secured by the Constitution or laws of the United States and that such deprivation was committed by persons acting under color of state law. Gómez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).
"[W]hile entitlement to protected benefits may be conferred by statute or by contract, see S & D Maintenance Co. v. Goldin, 844 F.2d 962, 966 (2nd Cir.1988), it is relatively clear that a contract dispute, in and of itself, is not sufficient to give rise to a cause of action under section 1983, id., Costello [v. Fairfield], 811 F.2d [782] at 784 [2d Cir.1987];" Walentas v. Lipper, 862 F.2d 414, 418 (2nd Cir.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989).
A careful reading of the complaint filed in this case shows that plaintiff's purported damages stem as a consequence of the alleged unilateral cancellation of a contract between Telco and PRTC. The complaint also shows that Telco, a solely owned corporation, was a private independent contractor of PRTC.[2] Plaintiff contends that his pro-independence affiliation led defendants to cancel Telco's contract, injuring, in the process, his First Amendment rights.
It is a well established premise that the First Amendment does not prohibit all forms of conduct based on political partisanship. See e.g. Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (cases of public employees coerced by patronage practices to adopt or disassociate themselves from a particular political belief). For instance, it has been held that the First *1071 Amendment did not prohibit a city from awarding a public contract based on political criteria. See La Falce v. Houston, 712 F.2d 292 (7th Cir.1983), cert. den., 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 175 (1984). In Sweeney v. Bond, 669 F.2d 542 (8th Cir.1982), cert. denied sub nom, Schenberg v. Bond, 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982), rejecting a first amendment challenge by a state motor vehicle agent who had been dismissed for political partisan reasons, the court stated an unwillingness "to extend the patronage decisions to cases which do not involve public employees". Id. at 545. Furthermore, in Fox & Co. v. Schoemehl, 671 F.2d 303 (8th Cir.1982), the court found that an accounting firm hired to audit the books of a school board was an independent contractor and therefore could be denied auditing contract because of its political affiliation. See also Messer v. Curci, 881 F.2d 219, 224 (6th Cir.1989).
The issue at bar, which slightly differs from those present at LaFalce, Sweeney and Fox, supra, can be put at rest through Horn v. Kean, 796 F.2d 668 (3rd Cir.1986). In Horn, the court interpreted Elrod and Branti, supra, to apply only to dismissal of "public employees for partisan reasons" and avoided extending First Amendment protection beyond said limitation. The court concluded that it was not "compel[led] ... to extend the protection of the first amendment to ... contractors ...". Horn, Id. at 674. Justifying its ruling, the court said: "(w)e do not know where Elrod and Branti will carry us, but we do know that once a genie escapes from the bottle he is not easily cabined. We believe that it is a danger for courts, other than the Supreme Court, to expand this particular rule". Id. at 678.
These cases force us to conclude that independent contractors, not being public employees, are not protected from dismissal or contract cancellation based solely on their political affiliation.[3] Thus, even taking plaintiff's allegations as true, his improper First Amendment challenge must be dismissed too.
In addition to a First Amendment infringement, the complaint conclusorily charges that PRTC violated plaintiff's Fifth and Fourteenth Amendment rights. Yet, there are no specific allegations concerning what process was due to plaintiff or how that process was denied to him. There are no allegations of unlawful denial of property rights either.
The Constitution does not guarantee any property rights as such. In Board of Regents v. Roth, 408 U.S. 564, at 577, 92 S.Ct. 2701, at 2709, 33 L.Ed.2d 548 (1972), the court expressly cautioned in this respect as follows:
"[P]roperty interests, of course are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law  rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (Emphasis supplied.)
In this case, plaintiff has utterly failed to identify any legitimate claims of entitlement under state law and/or any other legal source to have the guarantee of the due process clause apply to him. See Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and Board of Regents, supra. Plaintiff must show that he has a legitimate claim of entitlement under state law or other source as a precondition to invoke the due process protection.
Plaintiff's failure to plead the source of his entitlement constitutes, therefore, a failure to state an actionable property right under the due process clause of the Constitution. The complaint simply fails to state a claim actionable under federal law, thus making said claim dismissable.
Furthermore, the complaint fails to state what procedural protection plaintiff was entitled to and how the defendants failed to *1072 accord him such procedural protection within the meaning of the due process clause. It is not enough to conclusorily allege due process protection. Plaintiff must plead facts which show that an actual deprivation of a constitutionally cognizable process occurred. This criteria was not met.
In an unsuccessful attempt to somehow spell out a federal claim, plaintiff further alleges that the actions of PRTC constituted a violation of the Fourteenth Amendment. The Fourteenth Amendment applies the constitutional due process and the equal protection of the laws clause to the States. Yet, plaintiff failed to specify how the 14th Amendment could be related to this case.
The function of the equal protection clause "is to measure the validity of classifications created by state laws". Parham v. Hughes, 441 U.S. 347, 358, 99 S.Ct. 1742, 1749, 60 L.Ed.2d 269 (1979). The equal protection clause applies only to the making of classifications, not to the adjudication of individual situations. Nowak, Rotunda & Young, Handbook on Constitutional Law, West Publishing, 3d Ed., 1986 at p. 519. Plaintiff's equal protection challenge can succeed only if he shows the existence of a legislative classification not rationally related to a legitimate public end. Murillo v. Bambrick, 681 F.2d 898, 901 (3rd Cir.1982), cert. denied, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982). Plaintiff has failed to so state or allege and, consequently, no claim under the 14th Amendment has been stated. Therefore, said claim must be dismissed.
Whatever we have left in the complaint is a breach of contract. The United States Supreme Court has been reluctant to apply § 1983 in cases that present questions that can be solved by state law. For instance, in the normative case of Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 reh. denied, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976) (federal civil rights statutes do not constitute a body of general federal tort law), the court refused to "federalize" the law of torts saying that an alleged defamation did not, standing alone, give rise to a claim under section 1983.
In Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the court held that the tort remedy provided by the State was "sufficient to satisfy the requirements of due process". Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), extended the Parratt rule to cover intentional deprivations of property by state employees acting under color of state law. See also Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Estes v. Tuscaloosa County, 696 F.2d 898 (11th Cir.1983); Clark v. Solem, 628 F.2d 1120 (8th Cir.1980); Association for the Preservation of Freedom of Choice, Inc. v. Simon, 299 F.2d 212 (2nd Cir.1962); Reilly v. Leonard, 459 F.Supp. 291 (D.Conn.1978); Christensen v. Rice, 456 F.Supp. 419 (E.D. Wis.1978); Poirier v. Hodges, 445 F.Supp. 838 (M.D.Fla.1978); Duff v. Sherlock, 432 F.Supp. 423 (E.D.Pa.1977); Tribe, Constitutional Law, Foundation Press, 1988, § 10.
In the case at bar, plaintiff claims that defendants deprived him of his civil rights when they allegedly terminated the contract that plaintiff's corporation had with PRTC. Even assuming the allegations to be true, however, this type of indirect claim is not cognizable under § 1983.
Similar cases have been brought before us previously and consistently we have decided the issue in the same manner. "(A) Section 1983 claim for constitutional violation based on breach of contract is especially untenable when plaintiff has a meaningful post deprivation remedy under state law."[4] Puerto Rican Law provides sufficient remedy for courts in Puerto Rico to adjudicate the matter. It is the Superior Court of Puerto Rico which has jurisdiction. The federal court must "abstain from hearing this claim because [the action] *1073 is a matter of Commonwealth concern on an issue of Puerto Rico Law." Globe Data, supra; Colorado River Water Conservation District v. United States, 424 U.S. 800, 814-15, 96 S.Ct. 1236, 1244-45, 47 L.Ed.2d 483 (1976); County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

§ 1981 CLAIM
The legislative history of the Civil Rights Act of 1866, from which 42 U.S.C. § 1981 is derived, clearly indicates that Congress intended to protect a limited category of rights specifically defined in terms of racial equality. Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). Although its protection has been expanded to cover aliens, section 1981 applies only to racial discrimination cases. Agnew v. Compton, 239 F.2d 226 (9th Cir. 1956), cert. denied, 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957); Arnold v. Tiffany, 359 F.Supp. 1034 (C.D.Cal.1973) aff'd, 487 F.2d 216 (9th Cir.1973), cert. denied, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); Marshall v. Plumbers and Steam-fitters Local Union, 343 F.Supp. 70 (E.D. La.1972); Williams v. San Francisco Unified School Dist., 340 F.Supp. 438 (N.D. Cal.1972); Folk v. Wilson, 313 F.Supp. 727 (D.Del.1970). The absence of an allegation of racial discrimination is fatal to a cause of action brought under 42 U.S.C. § 1981. The applicability of this section is limited to said type of discrimination and does not pertain to discrimination on grounds of religion, national origin, or sex. Olson v. Rembrandt Printing Co., 375 F.Supp. 413 (E.D.Mo.1974), aff'd, 511 F.2d 1228 (8th Cir.1975). Neither does it pertains to allege discrimination on grounds of political belief. Thus, plaintiff's rights to free association claims under § 1981 in this case must be dismissed.
In conclusion, the facts, taken as true, Williams v. City of Boston, 784 F.2d 430, 433 (1st Cir.1986), and viewed in the light most favorable to plaintiff, including drawing all reasonable inferences in his favor, C. Wright, A. Miller, M. Kane, Federal Practice & Procedure § 1357, at 594 (1969 & Supp.1986), fail to make out claims cognizable under the Civil Rights Act or the Federal Constitution. Instead, they point towards a state cause of action for breach of contract on behalf of Telco for which there are state remedies.
It has been held that where all federal claims are dismissed or otherwise no longer viable before trial, the Court should also decline to exercise jurisdiction over pendent state claims. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Shaffer v. Board of School Directors of the Albert Gallatin Area School District, 730 F.2d 910, 912 (3rd Cir.1984); Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524 (1st Cir. 1983). There are no extraordinary circumstances which would justify this Court's retention of jurisdiction over the breach of contract claim. Consequently, the Complaint should be and is hereby ORDERED dismissed in its entirety. It is FURTHER ORDERED that Judgment be entered accordingly.
IT IS SO ORDERED.
NOTES
[1] See Complaint, paragraph 6. The corporation, named Telco Construction, Inc. ("Telco"), had a contract with PRTC to install public phone booths.
[2] See Complaint, paragraph 7.
[3] As in Sweeney and Horn, supra, in Joos v. Bond, 526 F.Supp. 780 (E.D.Mo.1981), aff'd., Sweeny v. Bond, 669 F.2d 542 (8th Cir.1982), cert. denied, Schenberg v. Bond, 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982), a similar conclusion was reached.
[4] See Globe Data Systems v. Angueira, 87 DCO 192, citing, Parratt v. Taylor, supra, and Hudson v. Palmer, supra.