Reinaldo **RAMÍREZ**, et al., Plaintiffs

v.

Edgardo **ARLEQUÍN**, et al., **Defendants.**

Civil No. 03–2376(SEC).

United States District Court, D. Puerto Rico.

Feb. 23, 2005.

Pedro R. Vazquez, III, Pedro R. Vazquez Law Office, Guaynabo, PR, for Plaintiffs.

Gina Ismalia Gutierrez–Galang, Johanna M. Emmanuelli–Huertas and Jorge Martinez–Luciano, Pedro Ortiz Alvarez Law Offices, Ponce, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Co-defendant Edgardo Arlequn–Vlez's motion to dismiss in his individual capacity (Docket # 5). Also is pending Co-defendants Arlequn–Vlez's in his official capacity and the Municipality of Guayanilla's motion to dismiss (Docket # 8).[1] Plaintiffs filed a consolidated opposition to Defendants' motions (Docket # 10). Thereafter, Defendants filed separate reply briefs to Plaintiffs' consolidated opposition (Dockets ## 11 & 15). Co-defendant Arlequn–Vlez in his individual capacity filed a supplemental reply to Plaintiffs' opposition (Docket # 21) and Plaintiffs sur-replied (Docket # 24). After carefully examining the parties' arguments, the case record and the applicable law, Defendants' motions will be **GRANTED.**

**Factual Background**

Co-plaintiff Reinaldo Ramrez is a Certified Public Accountant (CPA) and sole owner of Remexcel Managerial Consultants, Inc. ("RMC"), a corporation which renders accounting and managerial professional services (Docket # 1 at 3.1). Co-plaintiff Maria S. Kortright–Soler is an attorney at law. Co-plaintiffs RMC and Kortright entered into respective professional services contracts with the Municipality of Guayanilla in order to aid the Municipality with the identification and recovery (legal action) of monies associated with a series of deficiencies in the payment

---

1. Co-defendant Arlequn–Vlez in his individual capacity filed a motion to join the arguments in the motion to dismiss filed by Co-defendants Arlequn–Vlez in his official capacity and the Municipality of Guayanilla (Docket # 9). Said motion for joinder was granted on February 7, 2005 (Docket # 31).

of municipal taxes for commercial activities (herein the "tax deficiency litigation") (Docket # 1 at 4.8, 4.15). At that time, the Mayor in the Municipality of Guayanilla was a member of the New Progressive Party ("NPP"). Both contracts of professional services stipulated that payment for the services rendered would be made on a contingency-fee basis. Pursuant to their agreement, Co-plaintiff RMC would recover ten percent (10%) "of the revenues received under the concept of additional funds obtained due to the efforts and endeavors of the Firm." (Docket 1 at 4.7). Co-plaintiff Kortright agreed to represent the Municipality in the tax deficiency litigation in the Commonwealth's courts for a fixed amount of $1,000/month for expenses and ten percent (10%) of the monies collected as a result of her work (Docket # 1 at 4.14 & 4.34).

Before the tax deficiency litigation concluded,[2] the general elections of 2000 were held and a new Mayor was elected for the Municipality of Guayanilla. Subsequently, Co-defendant Arlequn–Vlez of the Popular Democratic Party ("PDP") took office. Thereafter, Plaintiffs' professional services contracts were terminated and other professionals were retained to continue to work in the tax deficiency litigation (Docket # 1 at 4.17 & 4.23). After the tax deficiency litigation concluded favorably for the Municipality, Plaintiffs approached the Municipality in order to collect the contingency fee agreed upon in their respective contracts (Docket # 1 at 4.30, 4.31 & 4.37). The Municipality refused to pay Plaintiffs and instead, paid the contingency fee to the professionals who replaced Plaintiffs (Docket # 1 at 4.38).

**Standard of Review**

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). *See also Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir. 1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997) (*quoting Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988)). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.' " *Id.*

In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle*, 142 F.3d at 508 (*quoting Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). *See also Rogan v. Menino*, 175

---

**2.** *Veba Oil Supply v. Mun. of Guayanilla,* Civil No. JCO 96–0003. This case was litigated in the Commonwealth of Puerto Rico Court of First Instance, Superior Court of Ponce.

F.3d 75, 77 (1st Cir.1999). Moreover, Courts "will not accept a complainant's unsupported conclusions or interpretations of law." *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993).

### Applicable Law and Analysis

Plaintiffs filed the present action under 42 U.S.C. § 1983 seeking compensatory and punitive damages, in addition to costs, interests, and attorneys' fees, for the alleged political discriminatory actions taken against them by Defendants in refusing to honor their obligations under their respective professional services contracts in violation of their First Amendment rights. Additionally, Plaintiffs claim that they have been deprived of their property rights without due process of law. Plaintiffs have also included a claim for violation to their substantive due process rights and supplemental causes of action under the laws of the Commonwealth of Puerto Rico for breach of contract and unjust enrichment.

Defendants have presented a plethora of arguments in their request for dismissal of Plaintiffs' claims, namely: (1) Co-defendant Arlequn–Vlez in his individual capacity is entitled to qualified immunity; (2) lack of standing of Co-plaintiff Ramrez to sue under Section 1983; (3) Plaintiffs have no property interest; (4) a mere breach of contract is not a deprivation of property without constitutional due process; (5) political affiliation is an appropriate requirement for the professional services contracts at issue; (6) Plaintiffs have failed to state a *prima facie* case of political discrimination; (7) Plaintiffs' claims under Section 1983 are time-barred; (8) the Court should abstain under the Younger doctrine; and (9) Plaintiffs' supplemental law claims should be dismissed. *See* Dockets ## 5, 8, 11 & 15. We will address these arguments in natural order to the extent that it is necessary.

### I. Section 1983

Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. *See Graham v. M.S. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to establish liability under Section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989); *Saugus v. Voutour*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir.1985).

Second, a plaintiff must show that the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Parratt*, 451 U.S. at 535, 101 S.Ct. 1908; *Gutierrez–Rodriguez*, 882 F.2d at 559. This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. *Gutierrez–Rodriguez*, 882 F.2d at 559; *Voutour*, 761 F.2d at 819. In turn, this second element of causal connection requires that the plaintiff establish: (1) for each defendant, that the defendant's own actions deprived the plaintiff of his/her protected rights, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gutierrez–Rodriguez*, 882 F.2d at 562; *Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989); and (2) that the defendant's conduct was intentional, *Simmons v. Dickhaut*, 804 F.2d 182, 185

(1st Cir.1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. *See Gutierrez–Rodriguez,* 882 F.2d at 562.

### A. Standing to Sue Under Section 1983

■ Defendants challenge Co-plaintiff Ramrez's standing to sue under Section 1983. Co-plaintiff Ramrez is the sole owner and President of Co-plaintiff RMC (Docket # 1 at 3.1). By Plaintiffs' own assertions, the two professional services contracts at issue in the instant case were executed between RMC and the Municipality of Guayanilla, and between Co-defendant Kortright and the Municipality of Guayanilla. *See* Docket # 1 at 4.5 & 4.15. The First Circuit case law is crystal clear to the effect that only the party whose civil rights have been violated may bring a claim pursuant to that Section. *See Judge v. City of Lowell,* 160 F.3d 67, 76 n. 15 (1st Cir.1998)("A section 1983 lawsuit is a personal action"). Moreover, a shareholder, even when he is the sole shareholder, does not have standing to bring an action under Section 1983 on behalf of a corporation. *Colon Rodriguez v. Lopez Bonilla,* 344 F.Supp.2d 333, 339 (D.P.R.2004) (*citing Gregory v. Mitchell,* 634 F.2d 199, 202 (5th Cir.1981)("a stockholder cannot maintain an action under the Civil Rights act for damages suffered by a corporation in which he owns shares.")) Accordingly, Co-plaintiff Ramrez's Section 1983 claims will be **DISMISSED WITH PREJUDICE.**

### B. First Amendment—Political Discrimination

■ Political discrimination restrains freedom of belief and association, core activities protected by the First Amendment. *See Elrod v. Burns,* 427 U.S. 347, 354, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). To prevail on a political discrimination claim against Defendants, Plaintiffs must establish that they: 1) engaged in constitution-ally protected conduct; and 2) that this conduct was a substantial or motivating factor in an adverse decision affecting them. *See Mt. Healthy City Sch. Dist. Bd. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Padilla–Garcia v. Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000). To meet this burden, Plaintiffs must show that there is a causal connection linking Defendants' conduct to their political beliefs. *See LaRou v. Ridlon,* 98 F.3d 659, 662 (1st Cir.1996). If Plaintiffs meet this burden, then Defendants have the opportunity to demonstrate, by a preponderance of the evidence, that the alleged adverse actions taken against Plaintiffs would have occurred even in the absence of his protected conduct. *See Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568.

■ It has been well settled that, except for policymaking/confidential positions, all government employees are protected from discharge from their positions on the basis of their political affiliation. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). This protection is afforded to all government employees: career positions, trust positions, and independent contractors. *See Guillemard Gionorio v. Contreras Gomez,* 322 F.Supp.2d 153, 161 (D.P.R.2004)(*citing O'Hare Truck Serv., Inc. v. City of Northlake,* 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996)("protections generally afforded to public employees against being discharged for refusing to support political party or its candidates also extend to independent contractors")). However, the First Circuit has recognized that employees in confidential positions are exempted from First Amendment protection regarding politically motivated dismissals. *Vazquez Rios v. Hernandez Colon,* 819 F.2d 319, 324 (1st Cir.1987); *Santiago–Correa v. Hernandez–Colon,* 835 F.2d 395, 397 (1st Cir.1987); *Morales–Narvaez v.*

*Rossello,* 852 F.Supp. 104 (D.P.R.1994). "The bottom line is that policymakers, and those who work in ongoing and intimate proximity to them, cannot reasonably expect *Elrod–Branti* insulation in their fundamentally political jobs." *Vazquez Rios,* 819 F.2d at 325.

■ In *Branti v. Finkel,* the Supreme Court held that "the ultimate inquiry ... is whether the hiring authority can demonstrate that party affiliation in an appropriate requirement for the effective performance of the public office involved." 445 U.S. 507, 519, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The *Elrod–Branti* doctrine protects government officials who make employment decisions based on political affiliation, but the protection is not absolute. *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241 (1st Cir.1986). "The First Amendment must yield to the vital interest of preserving representative government whenever elected officials choose to replace underlings employed in 'policymaking' or 'confidential' positions." *Berrios–Cintron v. Cordero,* 976 F.Supp. 110, 114 (D.P.R.1997). In *Jimenez Fuentes,* the First Circuit established a two-step analysis designed to aid the court in determining whether political affiliation is an "appropriate requirement for the effective performance of the public office involved." 807 F.2d at 241.

■ The first step of the *Jimenez Fuentes* approach is to ask "whether the position at issue, no matter how policy influencing or confidential it may be, relates to partisan political interests ... [or] concerns." 807 F.2d at 241 (*quoting Branti,* 445 U.S. at 519, 100 S.Ct. 1287). Second, the court must determine whether "the particular job resembles that of a policymaker, a communicator, or a privy to confidential information." *Id.* at 242. For a position to fit within the *Elrod–Branti* exception, both steps of the *Jimenez Fuentes* test must be satisfied.

To meet the requirements of the first step, the position "need only involve decision making on issues where there is room for political disagreement on goals or their implementation." *Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1258 (1st Cir.1987). The second step involves a further inquiry into the "inherent powers and privileges of the position ... and not to the duties actually carried out by a particular employee." *Jimenez–Fuentes,* 807 F.2d at 241.

■ In the context of a political discrimination claim, the issue of whether an employee holds a "trust position" constitutes a conclusion of law rather than a statement of fact. *Garcia–Sanchez v. Roman–Abreu,* 270 F.Supp.2d 255, 262 (D.P.R. 2003). Facts in that context are the official duties of the employee from which it is for the Court to determine whether the position is one for which political affiliation is an appropriate requirement. *Id.* In *Roldan–Plumey,* the First Circuit emphasized and reiterated that, in making a determination under the test's second prong, the Court is to look only at the duties inherent to the position, not to the actual functions of either past or present officeholders. *Roldan–Plumey v. Cerezo–Suarez,* 115 F.3d 58 (1st Cir.1997). *See also O'Connor v. Steeves,* 994 F.2d 905 (1st Cir.1993) ("[T]he analysis must focus upon the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office."). We proceed to apply the above-stated legal standard in order to ascertain whether Co-plaintiffs RMC's and Kortright's contractual relationship with the Municipality of Guayanilla fall within the *Elrod–Branti* policymaking exception.

## I. Co-plaintiff Kortright

■ Co-plaintiff Kortright and the Municipality of Guayanilla entered into a pro-

fessional services contract in which Co-plaintiff Kortright agreed to represent the Municipality in the tax deficiency litigation (Docket # 1 at 4.14). Under the contract Co-plaintiff Kortright would receive 10% of the monies collected from the litigation (Docket # 1 at 4.14). In furtherance of the tax deficiency litigation in *Veba Oil Supply*, Co-plaintiff Kortright filed two separate motions for summary judgment which eventually led to the resolution of the litigation in favor of the Municipality (Docket # 1 at 4.22–4.29). However, before the litigation concluded favorably for the Municipality, general elections were held in the Island and a new Mayor from the PDP party took office. According to Plaintiffs, the new Mayor canceled Co-plaintiff Kortright's contract "for no other reason than the fact that the Plaintiffs had been retained by the NPP Mayor" (Docket # 1 at 4.17). Thereafter, the PDP Mayor replaced Co-plaintiff Kortright with attorney Pedro Ortz Alvarez (Docket # 1 at 4.23). Then, as a result of the state court case *Veba Oil Supply*, the Municipality recovered $1.8 million dollars (Docket # 1 at 4.29). The Municipality refused to pay the 10% contingency fee ($180,000) allegedly owed to Co-plaintiff Kortright and instead paid it to the new attorney representing it (Docket # 1 at 4.30). Plaintiffs aver that the Municipality has refused payment simply because Co-plaintiff Kortright's association with the former NPP Mayor (Docket # 1 at 4.32).

Defendants, on the other hand, argue that Co-plaintiff Kortright's professional services contract falls within the *Elrod–Branti* policymaking exception and that accordingly, her professional services contract could be terminated by reason of her political affiliation (Docket # 5 at pp. 10–15). As a first step we must analyze the role exercised by Co-plaintiff Kortright and whether it involved "government decision making on issues where there is room for political disagreement on goals or their implementation." *Galloza v. Foy*, 389 F.3d 26, 29 (1st Cir.2004)(*quoting Jimenez Fuentes*, 807 F.2d at 241–42). Clearly, Co-plaintiff Kortright, as the legal representative of the Municipality in the tax deficiency litigation the purpose of which was to recover unpaid taxes due for commercial activities conducted within the Municipality, was in a position to impose her professional views and exercise her own criteria in the management of the case. Moreover, as the First Circuit has recently held "it is difficult to imagine a more politically sensitive issue than the collection and apportionment of taxes." *Id.* at 30. Since taxation is a vital political issue, we cannot but conclude that Co-plaintiff Kortright's role as the legal representative of the Municipality in a case seeking the recovery of unpaid taxes substantially relates to partisan political activities. *Id.* (*quoting Flynn v. City of Boston*, 140 F.3d 42, 46 (1st Cir.1998))("it is enough that the official be involved in policy, even if only as an adviser, implementer, or spokesperson"). Accordingly, the first part of the two-prong test is met.

In the second part of the policymaker analysis the underlying question is whether Co-plaintiff Kortright was privy to confidential information to the point of falling under the *Elrod–Branti* policymaking exception. As counsel for the Municipality, Co-plaintiff Kortright held the "ultimate trust position." *Davila Alemn v. Feliciano Melecio*, 992 F.Supp. 91, 99 (D.P.R. 1997). "[P]ublic employees, like anyone else, ought to be able to hire counsel they feel comfortable with, regardless of the basis for their comfort." *Id.* Furthermore, courts have consistently held that an attorney is subject to removal based on political affiliation. *See Stott v. Haworth*, 916 F.2d 134, 144 (4th Cir.1990) (listing Court-determined policymaking/confidential positions: assistant city attorney, *Finkelstein v. Barthelemy*, 678 F.Supp. 1255 (E.D.La.1988);

assistant county attorney, *Tavano v. County of Niagara*, 621 F.Supp. 345 (W.D.N.Y.) *aff'd*, 800 F.2d 1128 (2nd Cir.1986); assistant district attorney, *Livas v. Petka*, 711 F.2d 798 (7th Cir.1983); assistant state attorney, *Mummau v. Ranck*, 687 F.2d 9 (3rd Cir.1982)).

Courts have repeatedly held public legal counsel exempt from First Amendment protection regarding politically motivated dismissals. *See e.g. Nolla Amado v. Riefkohl–Rivas*, 673 F.Supp. 60, 62 (D.P.R.1987)(holding that political affiliation was an appropriate requirement for the position of legal counsel of the Puerto Rico Aqueduct and Sewer Authority); *Ruiz Roche v. Lausell*, 665 F.Supp. 99 (D.P.R.1987) *aff'd* 848 F.2d 5 (1st Cir.1988) (holding that the legal counsel for the president of the Puerto Rico Telephone Company could be discharged on political grounds); *Davila Aleman*, 992 F.Supp. at 99 (holding that the counsel for the Board of Medical Examiners could be discharged based on political considerations). Therefore, there is little doubt that as the legal representative of the Municipality, Co-plaintiff Kortright had access to confidential information and, consonant with her own averments in the complaint, was a key role player in the collection of the Municipality's unpaid taxes. It follows that Co-plaintiff Kortright's professional services contract could legally be terminated due to her perceived political affiliations with the NPP.

Now, to the extent that Co-plaintiff Kortright argues that the Municipality's refusal to pay the contingency fee constitutes breach of its contractual obligations, Co-plaintiff Kortright's cause of action is a garden-variety breach of contract claim and not a claim for political discrimination. *See* Docket # 1 at 4.30 & Docket # 10 at p. 7. Accordingly, Co-plaintiff Kortright's

First Amendment claim is hereby **DISMISSED WITH PREJUDICE.**

### ii. Co-plaintiff RMC

Plaintiffs aver that RMC entered into a professional services contract with the Municipality of Guayanilla in order to provide "various types of managerial and technical accounting services." (Docket # 1 at 4.5). Their objective was to identify tax evasion on commercial licenses, as well as any other tax evasion methods, which could result in an additional source of income for the Municipality (Docket # 1 at 4.6).[3] RMC's professional services contract stipulated that a 10% contingency fee was to be paid by the Municipality from the revenues generated as a result of RMC's efforts in identifying and recovering unpaid taxes (Docket # 1 at 4.7). Per RMC's allegations, RMC effectively investigated and identified a company who had evaded the payment of municipal taxes and rendered technical and accounting consulting services to the Municipality in furtherance of the tax deficiency litigation (Docket # 1 at 4.9). Thus, allegedly RMC was "instrumental" in the collection of unpaid taxes for the Municipality (Docket # 1 at 4.20). However, Defendants cancelled RMC's contracts and refused payment for the services rendered allegedly due to RMC's affiliation with the former NPP administration (Docket # 1 at 4.33).

Taking all of Plaintiffs allegations as true, following the same logic applied to Co-plaintiff Kortright's political discrimination claim, we conclude that RMC's professional services contract has "sufficient policymaking implications to avoid the constitutional proscription against politically motivated discharges." *Galloza*, 389 F.3d at 29. We explain. The duties performed by each Plaintiff under their respective

---

**3.** Specifically, RMC was retained to identify, investigate, organize, and compile evidence of municipal tax evasion for the Municipality of Guayanilla (Docket # 1 at 4.9).

professional services contract were substantially similar. While Co-plaintiff Kortright provided legal representation, Co-plaintiff RMC investigated, compiled, and organized information in order to make possible a legal claim against the companies delinquent on the payment of municipal taxes. Accordingly, the ultimate objective under both professional services contracts was essentially the same: the recovery of unpaid taxes for the Municipality of Guayanilla. As such, the same reasoning applies to both cases.

RMC was key in the implementation of the Municipality's tax investigation and collection policy. "In the idiom of the First Amendment case law, then, taxation is a 'vital political issue,' and one that is of special importance to those who harbor partisan political ambitions." *Id.* at 30 (*citing Jimenez Fuentes*, 807 F.2d at 243). Therefore, we find that Co-plaintiff RMC's professional services contract satisfies the first prong of the policymaker analysis. *See e.g., id.* at 31 (holding that since CRIM's regional managers were entrusted with the responsibility of implementing the tax policies set by CRIM's board of directors and executive director, said regional managers played an important role in the politically sensitive issue of taxation).

The second step of the *Jimenez Fuentes* test requires us to consider whether Co-plaintiff RMC's role in the collection of taxes for the Municipality resembled that of a policymaker and/or whether RMC had access to confidential information. *Jimenez Fuentes*, 807 F.2d at 242. "In making this determination, what counts are the attributes inherent in the position—its duties and powers—as opposed to the work actually performed by a quondam holder of that position." *Galloza*, 389 F.3d at 31. Although we do not have a formal job description under RMC's professional services contract, there is no doubt that identifying, investigating and

compiling evidence as to possible tax delinquencies provided RMC with ample discretionary leeway in the implementation of the Municipality's tax collection policy. *See* Docket # 1 at 4.9. Such a broad task of aiding the Municipality in the collection of unpaid taxes indicates that RMC's role was policymaking/confidential in nature. *Id.* (stating that "job descriptions with duties that are broad or open-ended generally allow for the latitude to exercise discretionary judgment (and, thus, tend to indicate that a position is policymaking in nature)." (citations omitted)).

Although we found no case law relating to the position of an accountant and the *Elrod–Branti* policymaking exception, we deem the First Circuit's opinion in *Galloza v. Foy* controlling. In said case, the First Circuit found the political affiliation of CRIM's regional managers to be an appropriate requirement in the termination of their employment. Ultimately, what persuaded the First Circuit was the nature and scope of the regional managers' job which could "affect the financial well-being of the communities within the region and [could] enhance or diminish CRIM's public image." *Id.* at 32 (citations omitted). As in *Galloza*, RMC's duties and responsibilities in furtherance of the Municipality's efforts to recover unpaid taxes afforded RMC a high degree of discretion, access to confidential information, and a key role in the implementation of the Municipality's policy. Therefore, RMC's contract could be terminated on political affiliation grounds. Accordingly, RMC's First Amendment claim is hereby **DISMISSED WITH PREJUDICE**. Finally, we note that the Municipality's refusal to pay the allegedly owed contingency fee, may amount to an actionable breach of contract claim under state law.

## II. Procedural Due Process

Plaintiffs also allege a deprivation of their procedural due process rights.

Under the Fourteenth Amendment of the Constitution, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

■■■■ In order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must first prove that he or she has a property interest as defined by state law and, second, that defendants, acting under color of state law, deprived him or her of that property interest without a constitutionally adequate process. *See Mimiya Hosp., Inc. v. U.S. Dept. of Health & Human Servs.*, 331 F.3d 178, 181 (1st Cir.2003) ("It is well established that 'individuals whose property interests are at stake are entitled to notice and an opportunity to be heard.'") (*quoting Dusenbery v. United States*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002)); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 30 (1st Cir.1991). Moreover, property interests are not created by the Constitution; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Defendants argue that Plaintiffs do not have a property interest in their professional services contract with the Municipality of Guayanilla. In addition, they aver that Plaintiffs' only possible claim against them is one for breach of contract under the laws of the Commonwealth of Puerto Rico. Accordingly, Defendants further argue that Defendants' alleged failure to pay Plaintiffs' contingency fee in breach of the respective contracts is not a deprivation of property interest without constitutional due process (Docket # 5 at pp. 4–7). We agree.

Plaintiffs have clearly stated that they seek federal court intervention in this case because the Municipality and its Mayor have refused "to honor a valid pre-existing contractual agreement between the Plaintiffs and the Municipality, for services which had been performed prior to the Defendant taking office as a Mayor of Guayanilla." (Docket # 10 at p. 7). Nowhere in their pleadings do Plaintiffs allege a proprietary interest in retaining their professional services contracts. Instead, all Plaintiffs seek is that the Court compel Defendants to honor their obligation of paying them for services rendered. *See e.g., Rivera Diaz v. P.R.T.C.*, 724 F.Supp. 1069, 1071–72 (D.Puerto Rico 1989) (holding that it is not enough to conclusorily allege due process protection, plaintiffs must plead facts show that an actual deprivation of a constitutionally cognizable process occurred).

Our finding that Plaintiffs' held "trust positions" from which they could have been legally separated on political grounds supports our conclusion that Plaintiffs do not have a cognizable due process claim. *See Nolla Amado*, 673 F.Supp. at 63. "[W]here state officials violate the terms of an employment contract that does not create a constitutional 'property' interest in the job itself, the proper remedy lies in a suit for breach of contract, not a [Section] 1983 action." *Bleeker v. Dukakis*, 665 F.2d 401, 403 (1st Cir.1981). It is well-settled that "a mere breach of contractual right is not a deprivation of property interest without constitutional due process of law." *Jimenez v. Almodovar*, 650 F.2d 363, 370 (1st Cir.1981) (holding that "[o]therwise, virtually every controversy involving an alleged breach of contract by a government or a governmental institution or agency or instrumentality would be a constitutional case."); *Lovelace v. Southeastern Mass. Univ.*, 793 F.2d 419, 425 (1st Cir.1986); *Velez–Rivera v. Agosto–Al-*

*icea,* 334 F.Supp.2d 72, 89 (D.P.R.2004). Therefore, it is evident that Plaintiffs alleged right to the collection of $180,000 in contingency fees does not automatically grant Plaintiffs a proprietary interest under the United States Constitution. Having failed to establish a property right, we need not reach the second prong of the due process analysis. Accordingly, Plaintiffs' claims for due process violations are hereby **DISMISSED WITH PREJUDICE.**

### III. Substantive Due Process

Plaintiffs also aver that they were deprived of their right to substantive due process in that they were dismissed only for political reasons. Pursuant to First Circuit case law,

> There are two theories under which a plaintiff may bring a substantive due process claim. Under the first, a plaintiff must demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment. Under the second, a plaintiff is not required to prove the deprivation of a specific liberty or property interest, but, rather, he must prove that the state's conduct "shocks the conscience."

*Brown v. Hot, Sexy & Safer Prods., Inc.,* 68 F.3d 525, 531 (1st Cir.1995) (citations omitted).

Plaintiffs have not alleged that Defendants' conduct "shocks the conscience." Instead, they have reiterated that they were deprived of a property interest, to wit, their compensation for services rendered. Accordingly, we will analyze Plaintiffs' substantive due process claim under the first theory. In any event, in this District, the termination of a public employee has been held not to rise to the level necessary to be "conscience shocking." *Pandolfi De Rinaldis v. Varela-Llavona,* 62 F.Supp.2d 426, 434 (D.P.R. 1999).

Plaintiffs' substantive due process claim under the first theory is similarly unconvincing. Deprivations of "identifiable liberty or property interests" actionable under the substantive modality of the due process clause "generally have something to do with 'matters relating to marriage, family, procreation, and the right to bodily integrity' rather than property or employment issues." *Learnard v. Inhabitants of Van Buren,* 164 F.Supp.2d 35, 41 n. 2 (D.Me.2001)(*quoting Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).Therefore, Plaintiffs' substantive due process claims will be **DISMISSED WITH PREJUDICE.**

### IV. Supplemental Law Claims

Having dismissed all of Plaintiffs' federal claims, we will similarly dismiss Plaintiffs' Commonwealth law claims. *See Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991)("[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the law suit."). Plaintiffs in the instant action have failed to state a claim for relief under federal law and instead have pled a simple breach of contract claim which may be adjudicated in state court. *See e.g., Casey v. Depetrillo,* 697 F.2d 22, 23 (1st Cir.1983). Accordingly, Plaintiffs' supplemental law claims for breach of contract and unjust enrichment are hereby **DISMISSED WITHOUT PREJUDICE.**

### Conclusion

For the reasons set herein, Defendants' motions to dismiss are **GRANTED.** Therefore, Plaintiffs' Section 1983 claims for political discrimination and due process violations are **DISMISSED WITH PREJUDICE.** The Commonwealth law claims against Defendants will be **DISMISSED**

**WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**SO ORDERED.**