# United States Court of Appeals

## For the First Circuit

No. 05-1494

REINALDO RAMÍREZ; REMEXCEL MANAGERIAL CONSULTANTS, INC.;
MARÍA S. KORTRIGHT

Plaintiffs-Appellants,

v.

EDGARDO ARLEQUÍN, Mayor of the Municipality
of Guayanilla, in his official and personal capacity;
MUNICIPALITY OF GUAYANILLA

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Circuit Judge,

John R. Gibson, Senior Circuit Judge[*],

and Lipez, Circuit Judge.

Pedro R. Vázquez, III for appellants.
Jorge Martínez-Luciano and Gina Ismalia Gutiérrez-Galang, with
whom Carlos Del Valle-Cruz was on brief, for appellees.

May 3, 2006

---

[*]Of the United States Court of Appeals for the Eighth Circuit,
sitting by designation.

**JOHN R. GIBSON**, <u>Circuit Judge</u>.  We are called upon to decide whether a deliberate executive decision by a state actor, based only on a partisan political change of administration, to deprive independent contractors of a payment to which they are legally entitled, violates the contractors' First Amendment rights. We hold that it does.  Accordingly, we reverse the district court's dismissal of the First Amendment claims of Remexcel Managerial Consultants, Inc., and Maria S. Kortright arising under 42 U.S.C. § 1983. We affirm the district court's dismissal of their due process claims and of all the claims asserted by Reinaldo Ramírez.

I.

Because this suit was dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, we review the district court's decision de novo and take the facts as pleaded in the complaint, drawing all reasonable inferences in the plaintiffs' favor.  <u>Campagna</u> v. <u>Massachusetts Dep't of Envtl. Prot.</u>, 334 F.3d 150, 154 (1st Cir. 2003).  The complaint alleges that Ramírez and his company, Remexcel, entered into a contract with the Municipality of Guayanilla during the tenure of Mayor Ceferino Pacheco Guidicelli, who was a member of the New Progressive Party, or "NPP."  The contract called for Remexcel to provide accounting services that would identify taxpayers who had not paid taxes owed to the Municipality.  Remexcel's compensation was to be ten percent of taxes successfully collected as a result of its efforts.

Pursuant to the contract, Remexcel identified deficiencies in the amount of $4,444,058.87 owed by Stinnes Interoil to the Municipality for the tax years from 1992 to 1997. Following administrative proceedings in which Remexcel assisted the Municipality, the Municipality notified Stinnes of its final determination that Stinnes owed $4,419,100.28 in taxes and interest. Stinnes objected and filed a lawsuit in the Puerto Rico courts, Veba Oil Supply v. Municipality of Guyanilla, Civil No. JCO 96-0003 (Super. Ct. Ponce).

The Municipality was obliged to hire counsel to defend the lawsuit. It hired Kortright under a contingency contract, which gave her the right to ten percent of the moneys collected as a result of her work. She worked on the litigation through the end of 2000, doing legal research, investigating the facts, and filing the summary judgment motions on which the suit was ultimately resolved. However, at the beginning of 2001, a new mayor, Edgardo Arlequín, took office; Arlequín is a member of the Popular Democratic Party, or "PDP."

The complaint alleges that Arlequín began "a pattern and practice of discrimination by taking adverse action against anyone associated with the prior New Progressive Party administration at any level." Arlequín "refused to continue any professional association with the Plaintiffs." Kortright was told to withdraw as counsel for the Municipality in the Veba Oil case, which she did

-3-

on January 22, 2001. She was replaced with a new lawyer, who did nothing of record but enter his appearance before the court granted summary judgment to the Municipality in the amount of $4.5 million, based on Kortright's work. The new lawyer then settled the suit for $3 million dollars, of which $1.8 million was paid to the Municipality and $1.2 million was paid to a different municipality.

The complaint alleges that Arlequín and the Municipality refused to pay Ramírez, Remexcel, and Kortright moneys which they had earned and to which they were entitled and that the only reason for the refusal was their association with the previous mayor. The complaint alleges causes of action under 42 U.S.C. § 1983 against the Municipality and against Arlequín, individually and in his official capacity, for violation of Ramírez's, Remexcel's, and Kortright's First Amendment right of association and for deprivation of property without due process of law, as well as a claim for breach of contract.

Arlequín and the Municipality moved to dismiss the complaint for failure to state a claim. The district court held that Ramírez lacked standing to assert a claim because the only injury was to Remexcel and Ramírez did not have standing to assert the corporation's claim. Ramírez v. Arlequín, 357 F. Supp. 2d 416, 421 (D.P.R. 2005).

The district court next considered whether Remexcel and Kortright were entitled to First Amendment protection against the

termination of their contracts. Applying precedents governing termination of government employment, such as Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980), the district court held that as a lawyer, Kortright occupied a confidential position and so was not entitled to protection from political firing. Ramírez, 357 F. Supp. 2d at 421-24. The district court held that Remexcel's contract also involved policymaking, and so was not entitled to protection from political discrimination. Id. at 425. The district court stated that Kortright and Remexcel's claims for moneys earned were merely contract claims, not claims for political discrimination. Id. at 424-25. The district court dismissed Remexcel's and Kortright's procedural due process claims on the ground that they had no property interest in the proceeds of their contracts. Id. at 426-27. Their substantive due process claims were dismissed because they alleged neither conduct that shocked the conscience nor deprivation of the kind of interests "actionable under the substantive modality of the due process clause." Id. at 427. Having dismissed the federal claims, the district court then declined to exercise supplemental jurisdiction over the contract claim arising under Commonwealth law. Id.

Ramírez, Remexcel, and Kortright appeal the dismissal of their claims. However, Ramírez does not argue that the district court erred in holding that he lacked standing; we therefore

-5-

consider him to have waived the argument, and we will consider the remaining arguments only with regard to Remexcel and Kortright.

## II.

Remexcel and Kortright argue that their complaint states a violation of substantive and procedural due process, as well as a violation of their First Amendment rights. In Zinermon v. Burch, 494 U.S. 113, 125 (1990), the Supreme Court identified three kinds of due process claims that can be asserted under § 1983: (1) for violation of one of the substantive rights found in other provisions of the Constitution, such as the First Amendment; (2) for arbitrary, wrongful government actions, regardless of the fairness of the procedure used; and (3) for deprivation of life, liberty or property by unfair procedures. Remexcel and Kortright allege all three kinds of claims.

## A.

Under the doctrine of "unconstitutional conditions," the government may not deny a benefit to a person on a basis that infringes the person's First Amendment rights. Bd. of Comm'rs v. Umbehr, 518 U.S. 668, 674 (1996). Under the related doctrine of "retaliation," the government may not impose burdens on persons in order to discourage or punish them from exercising protected constitutional rights. See Powell v. Alexander, 391 F.3d 1, 16-17 (1st Cir. 2004) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Rosenfeld v. Egy, 346 F.3d 11, 15 (1st

-6-

Cir. 2003). Generally, the government may not coerce persons into supporting a political party or punish them for exercising their right of association. O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 721 (1996) ("[T]he government may not coerce support in this manner, unless it has some justification beyond dislike of the individual's political association.").

The disputed question in this case is whether Remexcel and Kortright were entitled to First Amendment protection against retaliation for their affiliation with the former Mayor and the NPP. It might be tempting to view this case as just a breach of contract claim with no constitutional dimension. As discussed below, Remexcel's and Kortright's Fourteenth Amendment procedural due process claim fails because state contract remedies provide the requisite due process. Remexcel's and Kortright's First Amendment claim, on the other hand, is premised on a constitutionally proscribed reason for the alleged breach of contract—namely, the political affiliation of individuals claiming a right to payment for work already performed. Although we must always be concerned about constitutionalizing traditional common law claims, we see no theoretical bar to the First Amendment claim that is alleged here.

In a line of cases brought by government employees who were fired or penalized because of their political association, the Supreme Court held that there is no right to protection for political affiliation where political affiliation is legitimately

relevant to the employee's job. See Branti v. Finkel, 445 U.S. 507 (1980); Elrod v. Burns, 427 U.S. 347, 367-68 (1976) (plurality). "[I]f an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." Branti, 445 U.S. at 517. In Elrod, Justice Stewart's concurring opinion identified the kind of jobs that were protected from political discrimination as "nonpolicymaking, nonconfidential" government jobs. 427 U.S. at 375. Branti clarified that the policymaking or confidential criteria are merely signposts for the real question of whether the government has a legitimate interest in using political persuasion in hiring and firing:

> [T]he ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

445 U.S. at 518.

The district court concluded that Remexcel and Kortright performed policymaking or confidential duties under their contracts with the Municipality, and that they were therefore not entitled to First Amendment protection against discrimination based on their political affiliation. Ramírez, 357 F. Supp. 2d at 421-25. We must decide whether the exemption of "policymakers" from protection against political affiliation discrimination applies outside the

-8-

government employment context to someone who is neither a government employee nor seeks a continuing relationship with the government, but who merely asks to be paid in accordance with a contract which that person has already performed.

This circuit has held that the government's policymaking interest could override the First Amendment protection against political discrimination, even where the plaintiff was not a government employee. In Prisma Zona Exploratoria de Puerto Rico, Inc. v. Calderón, 310 F.3d 1 (1st Cir. 2002), Prisma Zona had negotiated an agreement with two public corporations created by Puerto Rico for Prisma Zona to operate a children's museum; however, Prisma Zona had failed to obtain a final commitment from the corporations before an election brought in a new administration, allegedly hostile to Prisma Zona because of its political affiliation. The new administration refused to transfer the museum funds to Prisma Zona. Prisma Zona brought a § 1983 suit alleging that the governor and others refused to transfer the assets to Prisma Zona because of its political affiliation and that this discrimination violated its First Amendment rights. Id. at 4. This court said the "legal landscape" for the claim was the Elrod line of cases. Id. at 4-5. Prisma Zona contended that the government could not decide against transferring the funds based on Prisma Zona's political affiliation, but we held it could, based on analogy to the government's right to fire policymakers for having

-9-

the wrong political affiliation:

> Even in core cases involving politically motivated hirings and firings, the Supreme Court has itself recognized that a wholly antiseptic application of the <u>Elrod</u> principle is unrealistic. Instead, party affiliation <u>is</u> an appropriate consideration in hiring and firing decisions with respect to government positions that may be characterized as "policymaking" or "confidential."
>
> Here, Prisma seeks to attack a set of decisions related to the possible privatization (whether to do so and through whom) of the operation of a children's museum and directing to it millions of dollars of public monies. Where policy choices of this magnitude are presented, courts ought not be second-guessing how much party politics in the narrower sense may also have played a role.

<u>Id.</u> at 7 (emphasis in original; citations omitted); <u>accord</u> <u>Walker</u> v. <u>City of Lakewood</u>, 272 F.3d 1114, 1132 (9th Cir. 2001). Thus, in <u>Prisma Zona</u> we applied the policymaking exemption from First Amendment protection outside the government employment setting.

Even though the policymaking exemption can apply to non-employees, there remains an important distinction between Kortright and Remexcel, on the one hand, and Prisma Zona and the fired government employees, on the other. Prisma Zona and the fired employees sought a continuing relationship with the government that would hamstring the government's ability to change policy directions, while Remexcel and Kortright seek only payment for services already rendered. While the government has a legitimate interest in having employees who possess all the attributes necessary for their jobs, even, where appropriate, political

-10-

attributes, here the government is not being asked to keep unqualified employees or contractors. Kortright and Remexcel were hired by a previous administration that considered them qualified, and they did their work for that administration; now, only the government's obligation of payment remains.

We suggested twice in Prisma Zona that the result might have been different if Prisma Zona had obtained a binding contract to operate the museum. First, we said that the lack of a binding contract weakened Prisma Zona's claim for protection from political discrimination: "Although a binding contract is not necessarily a condition of First Amendment protection, it would give Prisma Zona a much firmer basis in Supreme Court precedent to argue that it was protected from a politically motivated refusal to deal, quite apart from its use as an independent basis for relief under local law." Id. at 5. Later, we restricted our holding recognizing the government's policymaking interest to cases where the plaintiff had no binding contract: "Policymakers can be replaced, despite reliance, absent legal tenure or contract." Id. at 8. Once the government has entered a binding contract, its legitimate interest in preserving its freedom to disavow the contract is accordingly diminished.

Here, Kortright and Remexcel have alleged a binding contract, under which they have performed their part. Given the procedural posture of a Rule 12(b)(6) motion, we need not decide

-11-

whether the Municipality in fact has some legitimate policy-making interest that should eventually be taken into account in deciding whether it could refuse to pay debts on political grounds. We need only decide whether such an interest appears on the face of the complaint. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); Educadores Puertorriqueños en Accíon v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004). No legitimate governmental interest does so appear.

Since no governmental interest justifying discrimination on the basis of political affiliation is stated in the complaint, the case appears to be a routine First Amendment retaliation case. Remexcel and Kortright must plead that they engaged in protected association, that they were entitled to payment under their contracts, and that the Municipality denied the payment in retaliation for their exercise of associational rights. See Baker v. Coxe, 230 F.3d 470, 475 (1st Cir. 2000). These elements are adequately pleaded in the complaint. We therefore must reverse the dismissal of the First Amendment retaliation claim.

B.

Remexcel and Kortright also contend that they have stated a § 1983 claim for breach of their right to procedural due process

-12-

by virtue of the Municipality's failure to pay them amounts owing under their contracts. A claim of breach of contract by a state actor without "any indication or allegation that the state would refuse to remedy the plaintiffs' grievance should they demonstrate a breach of contract under state law," Casey v. Depetrillo, 697 F.2d 22, 23 (1st Cir. 1983) (per curiam), does not state a claim for violation of the plaintiffs' right of procedural due process. In Lujan v. G&G Fire Sprinklers,Inc., 532 U.S. 189, 196-98 (2001), the Supreme Court held that a claim for breach, under color of state law, of a contract to pay money would not support a due process claim unless state contract remedies were closed to the plaintiff. Kortright and Remexcel do not allege that there is no complete and adequate remedy available under state law for the breach of contract. The district court correctly dismissed their procedural due process claims.

C.

Kortright and Remexcel also invoke the doctrine of substantive due process in connection with the Municipality's political discrimination against them. Their substantive due process claim is coextensive with their First Amendment claim. Where the plaintiffs have stated a viable First Amendment claim for the very same conduct, we have declined to "enter the uncharted thicket of substantive due process to find an avenue for relief." Nestor Colón-Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 46

-13-

(1st Cir. 1992); accord Rosenfeld v. Egy, 346 F.3d 11, 15 (1st Cir. 2003) (same when equal protection claim duplicates First Amendment claim). Accordingly, we decline to reverse on substantive due process grounds.

We REVERSE the district court's dismissal of Remexcel's and Kortright's First Amendment retaliation claims and AFFIRM its dismissal of Ramírez's claims and of Remexcel's and Kortright's procedural and substantive due process claims. Each party is to bear their own costs on appeal.